## 11287

### WHEELER v. GLOBE & RUTGERS FIRE INS. CO.

#### (118 S. E., 609)

1. INSURANCE — DAMAGE TO AUTOMOBILE RUNNING ON FERRYBOAT MOORED TO SHORE HELD "LOSS WHILE BEING TRANSPORTED."—Damage to an automobile caused by the automobile running off a ferryboat moored to the shore while the automobile was being driven onto the boat to be ferried across a river *held* a loss while being transported within a policy covering a *loss* to the automobile while being transported in any conveyance by land or water.

2. INSURANCE—IN ABSENCE OF EXPRESS PROVISION IN AUTOMOBILE ACCIDENT POLICY; INSURED'S NEGLIGENCE HELD NO DEFENSE.—In the absence of an express provision to that effect, it is no defense to an action on an automobile accident polciy that insured's negligence caused or contributed to the injury.

---

NOTE: On insurance covering damage to automobile by accident or collision, see note in 14 A. L. R., 188.

Insurance covering automobiles, or indemnifying against liability for injury, caused thereby, is discussed in notes in 44 L. R. A. (N. S.), 70; 51 L. R. A. (N. S.), 583; L. R. A. 1915E, 575, and L. R. A. 1917F, 615.

3. INSURANCE—IN CASE OF DOUBT CONSTRUED MOST FAVORABLE TO IN-SURED.—Where a doubt arises in respect to the application, excep-tions to or limitation of liability, or clauses creating a forfeiture or relating to matters subsequent to the attaching of liability, the Court will adopt that construction most favorable to insured.

4. CONTRACTS—WHAT PARTIES INTENDED BY AMBIGUOUS CONTRACT HELD FOR JURY.—Generally, contracts are to be construed by the Court; but where a contract is not clear or is ambiguous and capable of one or more constructions, what the parties intended as a matter of fact should be submitted to the jury.

Before W. C. McLAIN, Special Judge, Marion, Decem-ber, 1922.   Affirmed.

Action by J. L. Wheeler against the Globe & Rutgers Fire Insurance Co., of the City of New York.   Judgment for plaintiff and defendant appeals.

*Mr. Jas. W. Johnson,* for appellant, cites: *Duty of Judge to construe contract even though ambiguous:* 3 S. C., 253; 15 S. C., 296; 15 S. C., 10; 19 S. C., 124; 17 S. C., 480; 82 S. C., 485; 24 S. C., 497.

*Mr. M. C. Woods,* for respondent, cites: *Article being put on ferry at wharf is in transportation:* 114 U. S., 196. *Where there is ambiguity, a contract will be construed against party who prepared it:* 84 S. C., 209; 13 C. J., 545, 783; 1 C. J., 414.   *Letter of local agent to assured admis-sible:* 115 S. C., 53.

August 6, 1923.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

The "case" contains the following statement:

"This action was instituted on January 15, 1921, upon a policy of accident insurance issued by defendant to plaintiff covering a Packard automobile.   The complaint alleged that while the automobile was being transported across Great Pee Dee River at Allison's Ferry on a flat boat, the end of the flat boat broke off and the boat began to sink, and pre-

cipitated the automobile into the river, to its damage $1,-617.21. The defendant set up: First, a general denial. Second, it alleged that the only perils the automobile was insured against, applicable to the facts of this case, were: 'While (the automobile was) being transported in any conveyance by land or water, the stranding, sinking, collision, burning or derailment of such conveyance, including general average and salvage charges for which the assured is legally liable,' and that the damage to the car was not occasioned by any of these things, but, on the contrary the cause of the accident was the unskillful and negligent driving of the automobile off of the flat boat and into the Great Pee Dee River, by the defendant or his agent, while said flat boat was stationary and securely tied at its mooring on the river bank.

"The case was tried at the December term of Court, 1922, before a jury, who rendered a verdict in favor of plaintiff for the amount claimed, to wit, $1,838.26. Judgement was entered upon the verdict and within ten days thereafter notice of appeal was served."

At the close of plaintiff's testimony defendant moved for a nonsuit on the ground:

"That the defendant insured the plaintiff against direct loss or damage to his automobile only while being transported in any conveyance by land or water; that the entire proof shows that the car was not being transported when damaged, and, therefore, the plaintiff cannot recover."

This motion was refused. At the close of all the testimony in th ecase, defendant moved for a directed verdict on the grounds:

"(1) That the only provisions of the policy under which plaintiff can claim in this action provide that the defendant insured the plaintiff against direct loss or damage to his automobile only 'while being transported in any conveyance by land or water, the stranding, sinking, collision, burning or

derailment of such conveyance, including general average and salvage charges for which the assured is legally liable'; that all the evidence offered in the case showed that the damage in question was not done 'while (the automobile was) being transported in any conveyance by land or water, the stranding, sinking, collision, burning or derailment of such such conveyance, including general average and salvage charges for which the assured is legally liable,' but was due to someone driving plaintiff's automobile into the river while the ferry boat was moored to the shore.

"(2) On further ground stated in the plaintiff's motion for a nonsuit.

"(3) On the further ground that plaintiff has failed to prove that the damage to his car was occasioned by either the stranding or sinking of the flat, and he cannot, therefore, recover."

After entry of judgment, defendant appealed and by seven exceptions imputes error. At the hearing by this Court appellant's counsel announced that he did not press the seventh exception.

Exceptions 1 and 2 complain of error in not granting a nonsuit and in not directing a verdict as asked for.

Exceptions 3 and 4 complain of error in his Honor's not construing the contract, and in his holding that it was ambiguous, and in submitting it to the jury, and in his charge to the jury in reference to how it was to be construed.

Exceptions 5 and 6 complain of error in refusing to charge the jury defendant's requests 1 and 2.

The evidence shows that the car was injured while the boat was tied to the bank; the driver of the car was attempting to drive the car on the boat when the accident occurred. The car could not have been lifted on the boat. The proper way to get it on the boat was to drive it on, and in driving it on it was being transported.

When a car reaches a ferry, the usual way to get it on the boat is to drive it on, and then it is ferried across the stream, and when it reaches the opposite bank the usual way is to drive off of the ferry boat.

The driving on the ferry boat and driving off is transporting the car.

Receiving and landing automobiles and passengers by a ferry boat is incident to their transportation. The accident to the car, in this case, occurred while the driver of the car was attempting to get it on the boat for the purpose of being ferried across the river, and landed on the other side of the river. The car was being transported according to the true intent and meaning of the terms of the policy, and his Honor was right in not granting a nonsuit, or directing a verdict, as asked for by the defendant.

Even though Bryan was negligent in loading the car, that would not defeat plaintiff's recovery. There is no provision in the policy that excepts from the risk accidents due to insured negligence or that of his servants. "The contract evidenced by a policy of accident insurance is entered into by the insured for the purpose of obtaining protection in case of accidental injuries, whether or not they result from thoughtlessness, carelessness or negligence; and it is accordingly well settled that it is no defense to an action on such policy that the negligence of the insured caused or contributed to the injury, unless, of course, the policy expressly excepts from the risk accidents due to insured negligence. 1 Corpus Juris, 487."

We do not think his Honor was in error in holding the contract was ambiguous, as complained of, and in submitting the question to the jury. He charged the law correctly applicable thereto.

As to accident insurance the rule is stated in 1 Corpus Juris, 414:

"In case there is any ambiguity in the policy, the rule is that all provisions, conditions, or exceptions which in any

way tend to work a forfeiture of the policy or limit or defeat liability thereunder, should be construed most strongly against those for whose benefit they are inserted, and most favorably toward those against whom they are meant to operate, and this rule is applicable to purely benefit accident policies as well as to the ordinary accident policy. Accordingly the Court will adopt the construction most favorable to the insured when a doubt arises in respect to the application, exceptions to, or limitations of liability, or clauses creating a forfeiture or relating to matters subsequent to the attaching of the liability, the rule being especially applicable to the latter."

As a general rule, contracts are to be construed by the Court; but where a contract is not clear, or is ambiguous and capable of one or more constructions, what the parties really intended, as a matter of fact, should be submitted to a jury. We see no error in his Honor's refusal to charge defendant's requests as asked for.

All exceptions are overruled, and judgment affirmed.

MESSRS. JUSTICES FRASER and MARION concur.

MR. CHIEF JUSTICE GARY did not sit.

MR. JUSTICE COTHRAN (dissenting). Action upon a policy of insurance covering loss or damage to an automobile. The plaintiff had a verdict for the full amount claimed, and the defendant appeals.

The accident which resulted in damage to the automobile occurred under peculiar circumstances.

The plaintiff with a party of ladies was riding in his car en route from Marion to Allison's Mill, on the opposite side of Great Pee Dee River, in Florence County; there was a ferry across the river near the mill. When the plaintiff drove up to the river he had a bad tire. He decided to leave the car, cross the river in the flat boat, go to the mill, get dinner, and return to the point where the car was left, and in the meantime to send one of the men at the mill across the river to fix the tire. He testified:

"When I got over I sent Mr. James O'Bryan over to the Marion side of the river with instructions to change the tire on the car. He was not instructed to put it on the flat and bring it over. He was sent over to change the tire. I did not instruct him to put it on the flat and bring it over; I did not instruct anybody to do that. * * * That he told the ferryman: 'I am not in a hurry; I am not going to take the car over."

The man O'Bryan was not examined as a witness, but the ferryman, Furches, testified that when the plaintiff drove up to the river he (the ferryman) was fixing the landing, and the plaintiff said:

"It is all right. I am not going to carry my car over anyway. I will carry these ladies over and leave the car here. There is a flat tire on my car and I will have John O'Bryan to come over and fix it."

That he ferried the party over and returned to finish the approach; he must have carried O'Bryan back to the Florence side, for he says that after dinner O'Bryan came to his house and told him that Mr. Wheeler wanted his car brought over; that he went down to the ferry with O'Bryan and carried him back over to the Marion side, where the car was; that O'Bryan said he did not know how to run a car; that he told him he had better let it alone, but he got in the car and started it; that when it started O'Bryan jumped out and let the car come on by itself; it was running wild; that he (the ferryman) got off the flat to get out of its way; that when the car got on the flat it turned to the left and ran off of the left corner of the boat, broke off the end of the boat, and went over into the river; that the boat tilted as the car bore down the end, and resumed its position after the car ran off.

The risks insured against were expressed in the policy thus:

"Does insure * * * the automobile described herein * * * while in building, on road, on railroad car or other

conveyance, ferry or inland steamer * * * against direct
loss or damage caused, while this policy is in force, by the
perils specifically insured against.  * * * B. While being
transported by any conveyance by land or water—stranding,
sinking, collision, burning or derailment of such convey-
ance. * * *"

The real question in the case, raised by motion for a non-
suit, by motion for a directed verdict, and by requests to
charge, is whether or not the injury to the car was a risk
covered by the policy.

There is evidence tending to show that the injury occurred
while the plaintiff's agent was attempting to load the car on
the flat boat, whether so authorized or not by the plaintiff;
and I agree that the loading was a step in the process of
transportation.  There is evidence, therefore, tending to
show that the injury occurred while the automobile was be-
ing transported in a conveyance by water, within the terms
of the policy.  If the policy covered every injury to the
automobile, however caused, while being transported, it
follows that the loss was covered by the policy.  But "there's
the rub."  The policy indemnifies the insured from "direct
loss or damage * * * caused by the perils specifically in-
sured against."  Among these perils are "stranding, sinking,
collision, burning or derailment of such conveyance," that
is, "any conveyance by land or water."  Transportation, *per
se,* cannot be considered a peril; it was not a peril insured
against, for the policy contemplated transportation; and it
covers specifically certain perils, which might be the cause
of loss or damage, while the car was being transported.  In
other words, the phrase "while being transported in any con-
veyance by land or water" was obviously intended to limit
the generality of the liability on account of "stranding,
sinking, collision, burning or derailment" of a conveyance.
The policy covers only a loss occurring while the car was
being transported, as a direct result of any one of the speci-

fied perils; both conditions must have coexisted in order to fix liability.

It is obvious that if the risk was unlimited, except by the fact of the car being transported, the liability of the insurer would attach, however the loss or damage may have been caused, so long as it occurred during the transportation; as for instance by the act of a trespasser or by the act of the owner, disconnected from any of the specific perils; and the limiting clause, "stranding," etc., would have been entirely superfluous; for what purpose could it have been inserted if not to limit the general expression "while being transported."

Under a policy like this, could it be contended in the case of transportation by rail that the insurer would be liable if a thief broke into the railroad car and demolished the machinery or stole the equipment? Such loss or damage would have occurred "while being transported" as much so as in the case at bar.

The meaning of the policy may perhaps be better expressed by transposing the phrase "while being transported" to the latter part of the sentence, thus:

"Does insure * * * against direct loss or damage caused * * * by the perils insured against. * * * A. Fire. * * * B. Stranding, sinking, collision, burning or derailment of such conveyance, while being transported in any conveyance by land or water."

It is contended by the plaintiff that the terms of the policy are ambiguous. The Circuit Judge so held and left the construction of the policy to the jury.

I see no ambiguity whatsoever in the policy. It means exactly what it says: That if the loss or damage should occur while the car was being transported in any conveyance by land or water, in consequence of any one of the perils specified, the insured should be indemnified.

The only possible ambiguity that could exist is a doubt as to the proper construction of the policy; that is, whether or

not both conditions, the facts of transportation and injury from one of the specified perils, must coexist; clearly a matter for adjudication by the Court; a patent ambiguity and not a latent one.

The difference between the two, as I understand it, is that a patent ambiguity is one that arises upon a consideration of the words of the instrument, as viewed in themselves, without reference to their application to the object which they describe; a latent ambiguity is one that arises, not upon a consideration of the words of the instrument, as viewed in themselves, but upon those words when applied to the object which they describe. 2 C. J., 1313.

A patent ambiguity may be so glaring as to annihilate the instrument for indefiniteness and uncertainty, or it may be such as to call for the rule of construction against the author of the instrument. In either event, the matter is one for the Court and not for the jury.

A latent ambiguity does not appear upon the face of the words, nor is its existence known until those words are brought in contact with collateral, extraneous facts.

It seems to me clear that patent ambiguities are for resolution by the Court; latent ambiguities by the jury, upon proof of the collateral, extraneous facts.

In this case there is no suggestion of collateral facts creating a latent ambiguity, and the Circuit Judge should have construed the policy.

I think that the authorities cited in the leading opinion demonstrate that if there was an ambiguity, it should have been resolved by the Circuit Judge; and the argument for the respondent admits as much. In the latter it is said:

"As a matter of law, applicable to contracts generally, when a contract is ambiguous and is capable of two or more constructions, the Court will refuse to permit a forfeiture, and will construe it most strongly against the party preparing the instrument."

How this rule can be enforced by a jury is not explained. In 1 C. J., 414, it is said:

"In case there is an ambiguity in the policy the rule is that all provisions, conditions, or exceptions which in any way tend to work a forfeiture of the policy or limit or de- feat liability thereunder should be construed most strongly against those for whose benefit they are inserted, and most favorably toward those against whom they are meant to operate, and this rule is applicable to purely benefit accident policies as well as the ordinary accident policy. Accord- ingly the Court will adopt the construction most favorable to the insured when a doubt arises in respect to the applica- tion, exceptions to, or limitations of liability, or clauses cre- ating a forfeiture or relating to matters subsequent to the attaching of the liability, the rule being especially applicable to the latter"—indicating, beyond a doubt, that the ambiguity of the character described must be resolved by the Court.

In 13 C. J., 785, cited by counsel for the respondent, it is declared:

"Where the terms of a contract are ambiguous, and their meaning is to be determined from extrinsic evidence which is conflicting, a question is presented for the jury. * * * Where extrinsic evidence is not required to determine the meaning of the contract, its construction is for the Court"— which is but another way of saying that latent ambiguities are for the jury; patent ambiguities for the Court.

In *Granite Co. v. Monument Co.,* 91 Vt., 177; 99 Atl., 875, it is held, quoting syllabus:

"In the absence of latent ambiguity, it is for the Court to construe a written contract."

To constitute a latent ambiguity, the meaning of the terms must require the aid of extrinsic facts in the interpretation, under which circumstances alone is the construction to be submitted to a jury. *Schneider v. Neubert,* 308 Ill., 40; 139 N. E., 84. *Ringrose v. Sloane* (D. C.) 266 Fed.. 402.

*Modern Woodmen of America v. Hall* (Ind.. Sup.) 130 N. E., 849. *Sunshine v. Furtick,* 114 S. C., 32, 102 S. E., 784.

In *Russell v. Arthur,* 17 S. C., 477, the Court said:

"There was no evidence of the contract except the defendant's letter * * * and we think it was error in the Circuit Judge to refer the construction of that letter to the jury instead of construing it himself. The fact that it was obscure and inconsistent in its different parts, making it difficult to understand, could not alter the rule that the Court and not the jury should construe a contract in writing." *Bank v. Heyward,* 15 S. C., 296. *Mowry v.Stogner,* 3 S. C., 253.

"When there is a doubt as to the meaning of a contract in writing arising from the language used, and not from extrinsic matters, the question as to what the parties meant is for the Court, and not the jury." *Penn v. Hare* (Tex. Civ. App.) ; 223 S. W., 527.

"The construction of a contract is always a matter of law for the Court, no matter how ambiguous or uncertain or difficult its terms, and the jury can only assist the Court in determining disputed fact questions." *O'Connor v. West Co.* (Cal. Sup.) 207 Pac., 527.

Even in the case of a latent ambiguity, if there is no conflict in the evidence the question is one of law for the Court.

In this case there was not a single fact for the jury to consider, in connection with the interpretation of the contract of insurance; and what they did with the question of law submitted to them I have not the slightest idea, and, of course, no means of correcting an error if it existed. The driver of the team is not expected to throw the line upon the dashboard.

I am of the opinion, therefore, that there was error on the part of the Circuit Judge in leaving the construction of the contract of insurance to the jury; that it should have been construed as heretofore indicated; and that the de-

fendant's motion for a directed verdict should have been granted.