11717

JOHNSON v. GLENS FALLS INS. CO.

(127 S. E., 14)

1. INSURANCE—LOSS OF AUTOMOBILE FROM RUNNING OFF FERRY HELD NOT COVERED BY INSURANCE POLICY.—Loss of automobile, which for unaccountable reason ran off end of ferry in midstream and sank, *held* not covered by insurance policy protecting against loss "while being transported in any conveyance—stranding, sinking, collision, burning or derailment of such conveyance."

2. CONTRACTS—ALL TERMS OF CONTRACT ARE TO BE CONSIDERED AND GIVEN EFFECT, IF POSSIBLE.—All terms of contract are to be considered and given effect, if possible.

Before DENNIS, J., Horry, October, 1923.   Reversed and remanded.

Action by V. M. Johnson against the Glens Falls Insurance Company. Judgment for plaintiff, and defendant appeals.

*Messrs. John T. Seibels* and *M. A. Wright,* for appellant, cite: *Granting plaintiff's motion to amend was error:* Code 1922, Sec. 399. *Allegations and proof:* 1 Abbott's Forms, page 397. *Latent ambiguity:* 139 N. E., 84; 266 Fed., 402; 130 N. E., 849. *Construction of contracts and policies:* 114 S. C., 32; 17 S. C., 477. (Dissenting opinion 125 S. C., 320.)

*Messrs. Sherwood & McMillan,* for respondent, cite: *Motion to amend was within the discretion of the Court:* 9 S. C., 334; 26 S. C., 474. *Construction of the policy and contracts in general:* 125 S. C., 320; 30 A. L. R., 192, and annotations; 14 A. L. R., 192; 84 S. C., 209; 13 C. J.; 545; 1 C. J., 414.

March 14, 1925.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

The action is based upon a policy of insurance, by which the company undertook to indemnify the insured from loss or damage to an automobile, resulting from certain enumerated perils. The case is, therefore, to be decided upon two considerations: (1) The circumstances under which the injury complained of occurred; and (2) whether the injury was a result of a peril insured against by the terms of the policy.

The circumstances of the injury are concededly beyond controversy. In the early hours of the morning, some time between midnight and 4 o'clock in the morning, Johnson arrived at the Yahannah Ferry, over Pee Dee River; he was driving his car, and a colored man sat with him on the front seat; Johnson aroused the ferry man, who came down to put him across; the end of the boat rested on the near

bank, and Johnson was directed to drive his car beyond the middle of the boat so that its weight would release the end of the boat that was resting on the bank; he did so; and, the boat coming clear, they started across; when they reached about the middle of the steram, Johnson, under the steering wheel and the colored man by his side, the automobile which was still in gear, for some unexplained cause, suddenly and swiftly moved forward; struck the "apron" of the boat, broke it, and plunged over the far end of the boat into the river; the colored man jumped out of the car onto the boat, and Johnson went over into the river with the car. The "apron" of the boat was an appliance, made of plank, used to make the approach to and departure from the boat more convenient; it was thrown back onto the boat when not so used; it was not intended to prevent a car from rolling off the end of the boat; the boat was not equipped with a chain to prevent this. There was no evidence tending to show that there was any defect connected with the boat which in any way contributed to the disaster; on the other hand, it is perfectly clear that the sole cause of it was the improper handling of the car by the plaintiff who was at the wheel and in absolute control of it. Was this the result of a peril insured against by the terms of the policy? The answer must be found in the terms of the policy.

It is alleged in the complaint that the policy insured the plaintiff against the following perils:

"(a) Fire arising from any cause whatsoever and lightning.

"(b) While being transported in any conveyance— stranding, sinking, collision, burning or derailment of such conveyance, including general average and salvage charges for which the insured is legally liable."

I think that the policy shows upon its face, plainly and without the slightest ambiguity, that the perils insured against were the stranding, sinking, collision,

burning, or derailment of the conveyance in which the automobile was being transported at the time of the injury. The conveyance was a ferry boat; the evidence shows that the ferry boat was not stranded; it did not sink; it was not burned; it did not collide with anything; and, of course, was not derailed.   While the automobile was being transported across the river, by improper handling, it suddenly and swiftly, "in the twinkling of an eye" (as the plaintiff testified), moved forward, broke the feeble resistance of the "apron", and plunged over the end of the boat into the river.   How this catastrophe can be charged to the stranding, sinking, burning, collision, or derailment of the ferry boat, against which perils alone the plaintiff was insured, none of which happened, I cannot conceive.

That these terms are referable to the conveyance in which the transportation was being effected, and not to the automobile which was being transported, appears to me too plain for discussion.   It is fundamental that all of the terms of a contract shall be considered and given effect if possible, and, if it should be held that, notwithstanding the obvious limitation, the policy covered all loss during transportation, no matter how caused, we read into the contract something that is not there, and annihilate something that is.   The reference to "general average" and "salvage", terms applicable to water transportation, leave no doubt that stranding, etc., referred to the conveyance.

I do not at all appreciate the force of the suggestion in the opinion of Mr. Justice Fraser that, because the policy exempts the company from liability in case the automobile shall "be used for carrying passengers for compensation, or rented, or leased, or operated in any race or speed contest, during the term of this policy," such a limitation would be without meaning if the other limitation in the policy that the perils insured against were only fire, lightning, and stranding, etc., of the conveyance, be given effect.   No valid reason, to my mind, has been suggested why both limita-

tions should not be given effect; they certainly are not inconsistent with each other. It is entirely possible that the conveyance in which the automobile was being transported stranded, sunk, collided, burned, or derailed, and yet, if the automobile at the time was being used for carrying passengers for compensation, or rented, or leased, or was being operated in any race or speed contest the exemption would apply.

I also fail to appreciate the force of the suggestion:

"Besides this, the jury might have come to the conclusion that when the flat was at the landing, the end next to the shore was resting on the bank, i. e., that end stranded; that when the automobile (a very heavy rar) was driven onto the flat, it was driven close to the other end, so as to lift up the shore end, and lower or sink the other end, and the forward end being lower, the attraction of gravitation drew the car off into the water."

I do not see the slightest ground for such an inference; the jury could not have been justified in imagining such a conclusion, in view of the admitted fact, testified to by the plaintiff, that the car moved off while the boat was in midstream, after it had righted itself, and there is no evidence tending to show that the movement of the car off of the boat was due to the extreme forward position of the car or that that position caused more than a momentary depression of the forward end as the boat left its mooring. The defendant's motion for a directed verdict should have been granted.

It is accordingly adjudged that the judgment of the Circuit Court be reversed and the cause remanded for the entry of judgment in accordance with Rule 27 of this Court.

MR. JUSTICE MARION and MR. ACTING ASSOCIATE JUSTICE A. M. LUMPKIN concur.

MESSRS. JUSTICES WATTS and FRASER dissent.

MR. CHIEF JUSTICE GARY did not participate.

MR. ACTING ASSOCIATE JUSTICE A. M. LUMPKIN (concurring) : It is my conclusion that the motion for a directed

verdict should have been granted.   My first impression was that this case was controlled by the recent decision rendered in *Wheeler v. Globe & Rutgers Fire Insurance Co.,* 125 S. C., 325; 118 S. E., 609.   After a careful study of the facts here presented as applying to defendant's motion for directed verdict, I am convinced that an entirely different issue arose in this case than in the *Wheeler Case.*   It is true that the Court decided in the Wheeler litigation that the contract was ambiguous as applied to the claim for loss there presented, therefore, for the determination of the jury. The issue was whether the automobile in question was in actual course of transportation at the time of the alleged loss, and, if so, was it covered by the terms of the policy introduced in evidence?

In the present case no issue of transportation arises.   The ferry boat was moving smoothly and satisfactorily across the stream, when suddenly and without warning the car went forward over the end of the boat, broke the wooden apron, and sank into the river; the owner at the time sitting under the steering wheel.   This is not a general accident policy.   The causes for liability are specifically limited. The perils insured against are:

"(a)  Fire arising from any cause whatsoever and lightning.

"(b)  While being transported in any conveyance by land or water—stranding,  sinking, collision, burning or derailment of such conveyance, including general average and salvage charges, for which the assured is legally liable."

There is no claim for loss by fire or lightning.   The machine in question was admittedly being safely transported by water at the time of the alleged loss.   The claim under such a policy must then be based on some named peril occurring to the vehicle of transportation.   To carry this issue to the jury evidence should be presented by the plaintiff showing that, while being transported, there was a strand-

ing, sinking, collision, or burning of the ferry boat which caused the loss.

The testimony produced by the plaintiff is that trouble occurred with the car and not with the ferry boat; the plaintiff stating:

"Q. What do you mean? A. Some way or other the car got started; the car was in gear and got started. I tried to keep it from running off the flat, but it was right at the apron, and the apron broke, and the car went down, and I went down with it."

On cross-examination the plaintiff stated:

"Who started it? A. There was a darkey in that car with me, and the best way I can think about it, it was done like a flash, that darkey must have struck that starter or something started that engine—the car was in gear—and I tried to keep it from going in, but the apron went right down."

Without the moving of the car no accident or loss would have occurred. There was no attempt by the plaintiff to prove a stranding, sinking, collision, or burning of the conveyance. On the contrary, the plaintiff's testimony negatives the idea of loss from any of these causes or perils named in the policy.

In the *Wheeler Case* the Court states:

"As a general rule, contracts are to be construed by the Court; but where a contract is not clear, or is ambiguous and capable of one or more constructions, what the parties really intended, as a matter of fact, should be submitted to a jury."

Whether the car in the *Wheeler Case* was being transported by water was the issue presented there, and under the terms of the policy the jury was left to construe the clause in question in view of all the facts presented.

In this case no loss could or would have occurred, but from the admitted movement of the car caused by its own power and through some act of the two occupants of the

machine. The construction of the contract here then elimi-
nates consideration of the transportation clause, and we
have to consider the clause naming the perils insured against.
Is this clause ambiguous when applied to the facts of the
present case? From the testimony, there was no stranding,
sinking, collision, or burning of the conveyance. The
plaintiff admits that no event or happening to the ferry boat
in the course of crossing the stream caused the loss. He
proves that the movement of the car in which he was sitting
was the sole and only cause.

No authority is cited by either counsel as bearing directly
on the clause in question, and we have spent considerable
effort in an endeavor to find such cases.

The *Wheeler Case, supra,* being applied to the transporta-
tion clause, we must find the conclusion here in a considera-
tion of the last clause above quoted naming the perils, on
which claim for loss might be based.

This clause contemplates a happening to the agency of
transportation. If such occurred, the plaintiff must make
proof thereof. We find no such evidence in the case. If
the policy in question applied to a human being, limiting the
loss to injury from specific happenings to the ferry boat, we
would have a clear case of self-destruction. This is just
what occurred to the car in question. From its own power
it ran off the ferry into the stream and was destroyed.

We see no ambiguity in the clause under consideration,
and the motion for a directed verdict should have been
granted.

MR. JUSTICE MARION concurs.

MR. JUSTICE FRASER (dissenting): The appellant's
statement of the case is as follows:

"This action was begun in the Court of Common Pleas
for Horry County on the ——— day of May, 1922, upon a
certain policy of accident insurance issued by the defendant
to the plaintiff on a Mitchell automobile.

"The case came on for trial at the October, 1923, term of said Court before the said Circuit Judge and a jury.

"Upon reading the pleadings, plaintiff's counsel moved for permission to amend the complaint by striking out the words 'by reason of stranding and sinking,' in Paragraph 4, which motion was resisted by defendant's counsel, but the Court allowed the amendment, and this action is the ground of the first exception. At the close of the testimony defendant's counsel moved for a nonsuit, but it was refused, and at the close of all of the testimony said counsel moved to direct a verdict upon the grounds hereinafter stated, in the third exception which motion was also refused. The jury found a verdict for $693.44. Subsequently, counsel moved for a new trial upon the grounds set forth in the exceptions, which motion was also refused by an order duly filed. In due time defendant's counsel gave notice of its intention to appeal from the said rulings and order and from the judgment entered herein.

"The complaint alleged in Paragraph 2 that the policy in question was issued on the 15th day of May, 1921, and that thereby the defendant insured the plaintiff against the following perils, to wit:

"(a) Fire arising from any cause whatsoever and lightning.

"(b) While being transported in any conveyance by land or water—stranding, sinking, collision, burning or derailment of such conveyance, including general average and salvage charged for which the assured is legally liable,'—and in Paragraph 4 that on or about the 10th of September, 1921, while the said policy of insurance was in full force and effect, while being transported on the flat or ferry boat across the Pee Dee river at Yahannah Ferry, 'the said automobile was damaged and ruined by reason of stranding and sinking within the terms of said policy and did sink in the said river' and was damaged $1,000.00, and that said amount had been demanded and payment refused, and that the same

was due by the defendant to the plaintiff with interest from 10th December, 1921. The defendant, by its answer, denied having sufficient knowledge or information sufficient to form a belief as to the plaintiff's ownership of said automobile, and denied the allegations of Paragraph 4, and especially denied that the damage, if any, sustained by said automobile, which it did not admit, was within the perils and risks carried by said policy.

"It appeared from the testmony that between 3 and 4, on the night of the 10th December, 1921, the plaintiff appeared at the Yahannah Ferry, and aroused the ferryman, Harley Cribb, and asked for transportation on the flat or ferry boat across the Pee Dee river at that point; that he was driving the Mitchell car, described in said policy, with a negro sitting alongside of him, and that he had been drinking, though the ferryman testified that he was operating the car all right, and that the car was run upon the flat, which was then set in motion, and that when half way across the river, for some cause, it suddenly shot forward, as the plaintiff says, 'like a flash,' and the ferryman says, 'just in the twinkle of an eye it dashed into the river.' The flat was equipped with the usual apron attached and working with arms on the side to make an easy entry of vehicles on and off the flat. It is lowered to receive a vehicle and raised as soon as the flat is in motion, and lowered again at the opposite bank, and is not intended to bear any weight except when resting upon the bank. The plaintiff testified that when the car struck this apron, which was very close, it broke and he and his car were precipitated into the river, the negro barely escaping by jumping on the flat. Of course, it is obvious that the starting of the car was due either to the driver or the negro getting the motor started, probably accidentally.

"The plaintiff was rescued with considerable difficulty, and subsequently the car was lifted from the bottom of the

river, and after some time was repaired and sold by plaintiff or some one for him."

I. The first assignment of error is that his Honor allowed the plaintiff to so amend his complaint as to destroy his cause of action. Of this the defendant cannot complain. If the plaintiff struck out the necessary allegations of his complaint, the defendant's remedy was by demurrer. It may be true that the presiding Judge may have overruled the demurrer, but the defendant would have reserved his question.

II. The next assignment of error that we will consider is the failure of the presiding Judge to construe the contract. His Honor could not have done anything else under *Wheeler v. Ins. Co.,* 125 S. C., 324, 325; 118 S. E., 609, 610, where we find under almost the same language:

"We do not think his Honor was in error in holding the contract was ambiguous, as complained of, and in submitting the question to the jury. He charged the law correctly applicable thereto.

"As to accident insurance the rule is stated in 1 Corpus Juris, 414:

" 'In case there is any ambiguity in the policy, the rule is that all provisions, conditions, or exceptions which in any way tend to work a forfeiture of the policy or limit or defeat liability thereunder, should be construed most strongly against those for whose benefit they are inserted, and most favorably toward those against whom they are meant to operate, and this rule is applicable to purely benefit accident policies as well as to the ordinary accident policy. Accordingly the Court will adopt the construction most favorable to the insured when a doubt arises in respect to the application, exceptions to, or limitations of liability, or clauses creating a forfeiture or relating to matters subsequent to the attaching of the liability, the rule being especially applicable to the latter.' "

This is a stronger case for the respondent than the *Wheeler Case.* The policy must be construed as a whole. A copy of this policy was, by consent, submitted to the Court, and it contains this provision:

"2. It is a condition of this policy that it shall be null and void—

"If the automobile described herein shall be used for carrying passengers for compensation, or rented or leased or operated in any race or speed contest, during the term of this policy."

It is manifest that, if the policy covered only damages from fire, lightning, or an injury to some other conveyance in which it is being transported, then these words are wholly without meaning, as races cannot be run on flat boats or railroad cars. There was no error here.

II. The next assignment of error to be considered is that the presiding Judge refused to grant a nonsuit or direct a verdict.

Until the contract had been construed, no verdict could have been found or directed. Besides this, the jury might have come to the conclusion that, when the flat was at the landing, the end next to the shore was resting on the bank, i. e., that end stranded; that, when the automobile (a very heavy car was driven onto the flat, it was driven close to the other end, so as to lift up the shore end and lower or sink the other end, and, the forward end being lower, the attraction of gravitation drew the car off into the water. There was evidence that the front end was submerged. It is true that there was a conflict about it, but it was the province of the jury to determine the facts.

The judgment appealed from should be affirmed.

MR. JUSTICE WATTS concurs.