**OLD COLONY INSURANCE COMPANY,**
Appellant,

v.

**W. R. ANDERSON, d/b/a Duke Anderson Drilling Company, Appellee.**

No. 5552.

United States Court of Appeals
Tenth Circuit.

June 11, 1957.

---

Clarence P. Green, Oklahoma City, Okl. (Walter D. Hanson, Oklahoma City, Okl., was with him on the brief), for appellant.

Gus Rinehart, Oklahoma City, Okl., for appellee.

Before BRATTON, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

This appeal involves coverage for damages to appellee's drilling unit under appellant's "Scheduled Property Floater Policy" insuring the appellee against, among other things, "direct loss of and/or damages to" the drilling unit "by: (f) collision, derailment or overturning of land conveyances while the insured property is being transported thereon on land."

The undisputed facts are that while the insured drilling unit was being transported on a truck, and the truck was checking its speed on a curve, the boom chains broke, causing the unit to slide off the truck and onto the ground where it struck or collided with another truck on the roadside. The truck did not collide with any object, nor did it overturn. Indeed, the only collision was that of the drilling unit with the ground and the parked truck on the roadside after it had left the truck on which it was being transported.

Upon a consideration of these facts, the trial court held that "The damage to the plaintiff's drilling rig was the result of a collision within the meaning of the policy"; and that the policy "therefore, covered the loss sustained by the plaintiff." This appeal is from a judgment for the insured, appellee.

The court's conclusions are based on the concept that the policy was "intended to and did insure plaintiff's drilling equipment against damage by collision while in transit on a land conveyance." Otherwise stated, the contract was intended to provide coverage for damages to cargo caused by collision, whether the means of conveyance was involved or not.

Considered apart from the promptings of the trial court, and the cases which seem to support its interpretative reasoning, we should have no difficulty construing the insuring clause as not assuming the peril which caused the loss. For, to us, the insuring language of the policy unambiguously assumes the risk of loss or damages to the drilling unit caused by a collision of the truck upon which it was being transported when the loss occurred, and does not assume the risk of damage caused by the collision or overturning of the cargo alone. Doubt comes only with contrariety in the cases.

The first case which seems to support the trial court's reasoning is Wheeler v. Globe & Rutgers Fire Ins. Co., 125 S.C. 320, 118 S.E. 609, 611. There, the policy insured cargo against damage "While being transported by any conveyance by land or water—stranding, sinking, colli-

sion, burning or derailment of such conveyance." While the driver of the insured automobile was attempting to board a ferry boat for the purpose of being transported across the river, the automobile in some way fell from the ferry and sank. The court thought the words of coverage ambiguous, and resolving the ambiguity in favor of the insured, held in effect that the true intent and meaning of the policy was to provide coverage for damages to the cargo while it was being transported; and that the words, "stranding, sinking, collision, burning or derailment of such conveyance" were only enumerations of the manner or the means by which the loss could occur. In a subsequent case (Johnson v. Glens Falls Ins. Co., 131 S.C. 253, 127 S.E. 14, 15, 40 A.L.R. 993), the same court, considering the identical insuring clause, arrived at a diametrically different conclusion under only somewhat slightly different facts. There, while the insured automobile was being transported by ferry across the river, it suddenly moved forward under its own power and plunged into the river. The writer of the majority opinion in the latter case (who dissented in the former) thought the policy "plainly and without the slightest ambiguity" showed "that the perils insured against were the stranding, sinking, collision, burning, or derailment of the conveyance in which the automobile was being transported at the time of the injury"; that "The conveyance was a ferry boat; the evidence shows that the ferry boat was not stranded; it did not sink; it was not burned; it did not collide with anything; and, of course, was not derailed." The court was thus unable to conceive how the asserted loss could be charged to the "stranding, sinking, burning, collision, or derailment of the ferry boat, against which perils alone the plaintiff was insured * * *."

A typical and oft cited case is C. & J. Commercial Driveway v. Fidelity & Guaranty Fire Corp., 258 Mich. 624, 242 N.W. 789, 790. There, the insurance contract insured the cargo against loss or damage caused by "accidental collision of the truck with any other automobile, vehicle or object." In accord with the philosophy of the Wheeler case, and following a prior Arkansas case (Importers' & Exporters' Ins. Co. v. Jones, 166 Ark. 370, 266 S.W. 286), the court thought the insurance contract, when considered in its entirety and upon its face, was intended to insure the cargo against the "hazards of the road while they are in transit." Construing the contract most favorably to the insured, and consistently with its found purposes, the court concluded that the "accidental collision of the truck with any other automobile, vehicle or object", included collision of an insured automobile being transported on the truck with an overhanging plank in a bridge. This reasoning has been applied to sustain coverage under similar insuring clauses in cases involving damage to cargo caused by collision or impact of the cargo with an object, but not the conveyance on which it is being transported. See Jorgenson v. Girard Fire & Marine Ins. Co., 229 Minn. 48, 38 N.W.2d 209, and cases cited.

Other well, and we think better, reasoned cases construe identical or similar insuring clauses as unambiguously insuring cargo only against damages caused by collision of the means of conveyance, and excluding from coverage damages caused by collision to the cargo alone. Thus, in Mendelsohn v. Automobile Ins. Co., 290 Mass. 228, 195 N.E. 104, with identical policy provisions and facts indistinguishably similar to C. & J. Commercial Driveway v. Fidelity & Guaranty Fire Corp., supra, the court arrived at an opposite result. The Massachusetts court could find no ambiguity in the insuring language, but on the contrary thought that the words used to define the peril insured against were "simple, everyday words and the structure of the sentence where they appear * * * not complicated." The court accordingly construed the contract as not including liability for damage resulting from the collision of the cargo and not the conveyance.

The Mendelsohn case was followed in Barish-Sanders Motor Co. v. Fireman's Fund Ins. Co., 134 Neb. 188, 278 N.W. 374; and Hamilton Trucking Service v. Automobile Ins. Co., 39 Wash. 688, 237 P.2d 781, 784. See also Annotation, 36 A.L.R.2d 522. The Washington court, in the latter case, could not avoid feeling that those courts which had construed the insurance contract as providing coverage "have created ambiguities where none existed and have then used rules of construction to determine the intent of the parties * * * thus enlarging the risk coverage of the insurance policies. * * *"

The conflict was recognized but not resolved in Garford Trucking v. Alliance Ins. Co. of Philadelphia, 2 Cir., 195 F.2d 381, involving a policy insuring against damage to cargo, caused by a "Collision of vehicle, overturning or other accident to the conveyance." The Second Circuit thought that a collision of the cargo with an overhanging bridge was an accident to the conveyance within the meaning and coverage of the policy, although not a "collision of vehicle." The court reasoned that if the force of the contact between the insured load and the bridge had caused injury to the truck, however slight, it would have plainly fallen within the phrase "other accident to the conveyance." From this hypothesis, the court construed the "policy to cover this peril whether or not the truck sustains damage."

Oklahoma, where this contract was apparently made and the claim arose, has not had occasion to construe policy provisions like these. In this diversity case, we can only forecast what the Oklahoma courts will hold when the occasion arises. In circumstances like these, we should not overturn the trial court's judgment as clearly erroneous simply because we have the last word, or because we prefer one line of pertinent authorities over another. And, we should not assay to do so if we were not convinced that the contract on its face delineates coverage in words too plain for doubt.

The judgment is reversed.