KEITH FULTON & SONS, INC.,
Plaintiff,

v.

CONTINENTAL INSURANCE COMPA-
NY OF the CITY OF NEW
YORK, Defendant.

Civ. A. No. 65–349–G.

United States District Court
D. Massachusetts.

Sept. 27, 1967.

John O. Parker, Daniel B. Bickford, Ely, Bartlett, Brown & Proctor, Boston, Mass., for plaintiff.

Thomas D. Burns, Burns & Levinson, Boston, Mass., for defendant.

## MEMORANDUM AND INTER-LOCUTORY ORDER

GARRITY, District Judge.

Plaintiff, Keith Fulton & Sons, Inc. ("Fulton"), a trucking company, has sued the defendant, Continental Insurance Company of the City of New York ("Continental"), on a liability insurance policy issued by the defendant. The plaintiff allegedly became liable to one of its customers, Bethlehem Steel Corp. ("Bethlehem"), when part of a lathe belonging to Bethlehem fell from the plaintiff's truck and was damaged. Jurisdiction of this court has been invoked on the basis of diversity of citizenship, which has been established. At a pretrial the issues of liability and damages were severed and a trial without jury was held on issues of liability only.

The loss occurred while the plaintiff, on Monday, May 27, 1963, was hauling a large crate containing the lathe from the pier at East Boston to Bethlehem's plant at Quincy, Massachusetts. The machine had been manufactured for Bethlehem at Frankfurt, Germany, by Meuser & Company and was in transit under a uniform straight bill of lading to Bethlehem as consignee. On the previous Saturday, the plaintiff had loaded two large crates directly from the ship's gear onto the plaintiff's flatbed trailer. The smaller crate, 14' long, was loaded on the trailer first and pushed as far forward as possible. The larger, 23' 3" long, 5' 6" high and 7' 10" wide, was loaded to the rear. When pushed as far forward as it could go, 4' 3" of it extended beyond the end of the trailer, which was 33' long.[1] The crates were marked "machinery" but there was no marking or description as to the number of pieces in them nor were they marked "fragile." They were part of a total shipment of 10 crates whose average weight, according to the plaintiff's quotation for the job, was about 20 tons. The weight of the crate which overhung the end of the trailer was 18 tons. It was mounted on 6' x 6' and 6' x 8' skids. The tractor hauling the trailer left the pier at about 7:30 A. M. and drove along the Southeast Expressway at a speed of 10–15 miles per hour through congested traffic. The driver knew he was hauling machinery, though he didn't know the type. When the truck and trailer passed over an expansion joint which crossed the entire width of the roadway, creating a bump about 2" high, the bottom of the part of the crate overhanging the back of the trailer broke open and the tailstock of the lathe fell to the ground, a distance of about 3', and was damaged. The surface of the highway was also damaged such that an entire section of it was thereafter repaved and the bump eliminated.

The liability insurance policy in effect at the time of the accident had been issued to the plaintiff by the defendant in 1959 and was entitled "Motor Truck Merchandise Floater." It contained among others the following material terms and conditions:

1. To cover only the liability of the Assured as hereinafter provided in respect to all kinds of lawful goods

---

1. The plaintiff's yard foreman, called as a defense witness, testified that the protrusion was "roughly three feet" and answered affirmatively when asked if it is normal loading procedure to permit "a few feet" of a long crate such as this one to extend over the end of a truck. This testimony was of slight relevancy, because the respective length of the crates and the trailer resulted in an overhang of at least 4'3" and the asserted practice was unrelated to a crate's weight and contents.

and/or merchandise accepted by the Assured for transportation, consisting principally of reinforcing steel rods, miscellaneous building supplies and machinery.

2. While the goods and/or merchandise are in the custody and control of the Assured and are:

(a) In or on Motor Trucks, Trailers and/or Semi-Trailers operated by and/or for the Assured

(1) In transit between points and/or places within the Continental limits of the United States and/or Canada, and/or

(2) Temporarily located in garage or garages for a period of time not exceeding forty-eight (48) hours, plus intervening Sunday and Legal Holidays, and/or

(b) In or on Landing Sheds, Depots, Stations and/or Platforms during the course of transfer between the above specified conveyances but only while actually in the custody and control of the Assured.

THIS INSURANCE COVERS

The liability of the assured as a common carrier or private carrier or under bills of lading or shipping receipts, for loss of and/or damage to the goods and/or merchandise caused by:

a. Fire, including self-ignition and internal explosion of the conveyance and lightning.

b. Collision, i. e., accidental collision of the conveyance with any other vehicle or object.

c. Overturn and/or upset of the conveyance.

d. Collapse of Bridge or Culvert.

f. Flood, meaning rising navigable waters.

g. Perils of the seas, lakes, rivers, and/or inland waters while on ferries only.

h. Collision; but this extension of coverage shall not apply to reinforcing steel rods. (added by endorsement #1)

i. Tornado, cyclone, or windstorm, excluding loss or damage caused by hail, rain, sleet or snow, sand or other dust, whether driven by wind or not, unless there shall first be an actual damage to roof or walls of a terminal building or of a fully enclosed wood or metal truck or trailer body by the direct action of tornado, cyclone, or windstorm, and then only for such loss or damage as may be caused by hail, rain, sleet or snow, sand or other dust entering through openings in the roof or walls made by the direct action of tornado, cyclone or windstorm. (added by endorsement #1)

The above provisions of the policy govern the first aspect of the dispute between the parties, that is, whether the accident was a peril within the coverage of the policy. The position of the plaintiff has been that there was a collision between the machinery and the highway when the bottom broke away from the overhanging crate. The defendant has submitted that there was no collision within the meaning of peril "h" and that the policy covered collisions only while cargo was "in or on" the truck as provided by paragraph "2a."

The second basic dispute between the parties is whether the plaintiff, assuming *arguendo* that the loss was covered, became liable to Bethlehem and complied with provisions of the policy respecting settlement. The uniform bill of lading pursuant to which the plaintiff handled the shipment included in Section 1–b the usual exception to the carrier's liability, for damage caused by the act or default of the shipper or owner. The policy contained the following clauses:

7. It is the purpose of this insurance, subject to the foregoing provisions and to the conditions of the basic policy, to indemnify the Assured only to the amount which the Assured shall become liable to pay and shall pay in respect of the merchandise and/or goods.

8. The Assured shall not make any settlement of any claim, for which liability is assumed under the policy, with-

out the written consent of this company. The Company, however, shall have the right to settle any claim or suit at its own cost at any time. The Assured, whenever requested, shall aid in securing information and evidence and the attendance of witnesses and shall cooperate with this Company (except in a pecuniary way) in all matters which this Company may deem necessary in the defense of any claim or suit or appeal from any judgment in respect of any loss for which this Company is liable under this policy.

On the day of the accident Bethlehem sent a freight claim report to the plaintiff reporting the accident and stating that the damaged machinery would be repaired. The next day the plaintiff sent a notice of loss to its insurance agent, who forwarded a copy to the Marine Office of America ("Marine Office"), which was the duly authorized agent of the defendant in all matters pertaining to this controversy. The Marine Office assigned an adjuster to investigate the claim. There was no further communication between the parties until January 1965, when the plaintiff received a detailed claim from Bethlehem for damages totalling $22,644. Bethlehem had returned the damaged part to Meuser & Co. at Frankfurt, Germany, for repairs. The Bethlehem claim also included transportation costs, customs charges, overseas telephone calls, labor expenses and other expenses connected with repairing the damage. On January 8, 1965 the plaintiff's insurance agent forwarded a copy of Bethlehem's claim to the Marine Office of America, which on January 12 replied that the claim was not within the scope of the policy terms and conditions. On February 5 and March 8 Bethlehem wrote to the plaintiff asking when its claim would be paid. On March 25 the Marine Office wrote to the plaintiff's insurance broker confirming a previous telephone conversation that coverage was not afforded under the policy because the damage had not been fortuitous but something that could have been anticipated with the method of packing. The plaintiff turned the matter over to its attorney, who wrote to the Marine Office on April 1 requesting payment of the claim. Its reply dated April 12 disclaimed liability. On April 29 plaintiff's attorney wrote again stating his opinion that the plaintiff was liable to Bethlehem for the full amount of the damage claimed; that the plaintiff was prepared to pay Bethlehem; that if the defendant had any objections he would appreciate receiving them before May 14; and that the plaintiff planned to institute suit against the defendant. On May 7 counsel for the Marine Office wrote in reply that they proposed to look into the matter and inform plaintiff's attorney of their conclusions in due course, stating, "It is unlikely, however, that we shall have received all of the papers and information we should have by May 14." That was the last communication between the parties regarding this matter.

The complaint herein was filed May 18, 1965. One of the defenses stated in the answer was that the plaintiff had not become liable for nor paid the loss alleged in the complaint. On October 27, 1966, shortly after a pretrial conference, the plaintiff on advice of counsel paid Bethlehem the full amount of Bethlehem's claim. Bethlehem did not bring suit against the plaintiff to enforce its claim for damages. There has been no agreement or understanding between the plaintiff and Bethlehem respecting the disposition of Bethlehem's claim or the proceeds, if any, of the plaintiff's claim against the defendant. The plaintiff has been in the rigging and trucking business for twenty years and its business with Bethlehem has amounted to approximately $100,000 annually since at least 1962.

■ The first question,[2] whether the incident was a "collision" within the meaning of the policy, must be considered in the light of Mendelsohn v. Auto-

2. As previously stated, the plaintiff does not claim that the truck collided with the bump in the road or with anything else; it relies upon the impact of the machinery upon the surface of the highway.

mobile Ins. Co., 1935, 290 Mass. 228, 195 N.E. 104, which construed the word as used in peril "b", "Collision, i. e., accidental collision of the conveyance with any other vehicle or object." That case involved damage to furniture frames being transported by truck when the top of the load, but no part of the truck itself, struck an overhead bridge. The court held this not to be a covered "collision" because liability was limited by the policy to damage by collision of the truck itself as distinguished from its load. Thereafter, peril "h" was added by endorsement covering "collision" generally. Peril "h" has not heretofore been the subject of judicial interpretation. However, two cases have dealt with claims for damages to machinery falling off a truck based upon clauses similar to peril "b", Employers Liability Assurance Corp. v. Groninger & King, Texas Civ.App., 1956, 299 S.W.2d 175, and Old Colony Insurance Company v. Anderson, 10 Cir., 1957, 246 F.2d 102. While reaching opposite conclusions as to the necessity of the truck itself having been in a collision, both decisions speak of the machinery as having been in collision with the ground. There is contrary opinion, e. g., Bell v. American Ins. Co., 1921, 173 Wis. 533, 181 N.W. 733, 14 A.L.R. 179, a decision dealing with the overturning of an automobile, in which it is said, "We do not speak of falling bodies as colliding with the earth." But the question before the court is not simply one of semantics. It is rather the intention of the parties to a contract of insurance. The effect of the defendant's interpretation of peril "h" would be to restrict its coverage to the odd type of accident involved in the Mendelsohn case, that is, when something strikes the cargo but not the truck

while the cargo remains upon the truck. In the court's opinion this interpretation is too narrow. If such a restricted meaning were intended, it would have been a simple proposition for the defendant to have said so. Peril "i" respecting tornado, cyclone or windstorm damage was added in the same endorsement and it contains elaborate and specific exclusions. With respect to the defendant's contention[3] that the plaintiff's claim is barred by the words "in or on motor trucks" in paragraph "2a" of the terms and conditions, these words appear not in the part of the policy describing coverage but in the part identifying the goods insured. The apparent purpose of paragraph 2 is to exclude losses for which the carrier may be liable under 49 U.S.C. § 20(11) while the goods are not in its custody and control. The defendant has not suggested that the plaintiff lost custody and control of the tailstock or that it ceased to be in transit when it dropped to the pavement.[4] The court considers that, when damaged, the machinery was "in or on" the truck within the meaning of paragraph "2a" and concludes that the damage to the machinery on May 27, 1963 was covered by peril "h".

Contrary to the defendant's suggestion in its agent's letter of March 25, 1965, the plaintiff had no genuine defense against Bethlehem's claim on the ground that the damage was caused by the act or default of the shipper, Meuser & Co. of Frankfurt, Germany. The defendant's agent wrote that the damage could have been anticipated with the method of packing.[5] This suggestion of a defense available to the plaintiff against Bethlehem's claim ignored the legal and factual realities of the situation. The applicable common law is stated in Miller, Freight Loss and

3. The defendant's further contention, that the proximate cause of the damage was the breaking of the crate and not the fall of the machinery to the ground, has not been overlooked. An extension of this reasoning might fix the cause of the damage as the lumber and nails used by the carpenter in Germany who put the crate together.

4. There was evidence that the truck driver immediately pulled over to the side of the highway and stayed with the damaged goods until the arrival of another of the plaintiff's trucks equipped with a wire winch.

5. At the trial the defendant argued additionally that the labeling on the crate was inadequate.

Damage Claims, 96–97 (3rd ed., 1967), as follows:

> As a general rule, the carrier cannot avoid liability on the ground of improper packing if its negligence contributes to the injury. Klauber v. American Express Co., 21 Wis. 21, 91 Am.Dec. 452. Generally, to excuse the carrier, negligence on the shipper's part must be the sole cause of the injury. McCarthy v. Louisville & N. R. Co. [102 Ala. 193] 14 So. 370; Northwestern Marble and Tile Co. v. Williams, [128 Minn. 514] 151 N.W. 419. * * * In Advance Air Conditioning v. Cain's Truck Lines, [198 Okl. 73,] 175 Pac.2d 338, the Court pointed out that where loss of or injury to goods while in possession of a common carrier of freight is shown, a prima facie case is made against carrier, and, if carrier relies on exception to such rule of liability as a defense, burden is upon carrier to show that loss occurred from some cause exempting it from liability.

There was no evidence as distinguished from speculation that the crate was improperly packed or labeled. It had been shipped intact from the factory in Frankfurt to the vessel at Hamburg, Germany, and across the Atlantic Ocean. Cf. Lewis Machine Company v. Aztec Lines, Inc., 7 Cir., 1949, 172 F.2d 746, 749. The plaintiff would have encountered insuperable practical difficulties in endeavoring to prove that the crate had been packed improperly in Germany. Finally, it is difficult to imagine clearer negligence than loading a wooden crate containing machinery weighing 18 tons on a trailer to be hauled over highways in such a manner that more than four feet of it overhang the end of the trailer.

Under the circumstances, the plaintiff acted reasonably in paying Bethlehem's claim. Plaintiff engaged counsel who, after reviewing the facts and the law, advised that liability existed and the claim should be paid. The defendant had twice disclaimed liability. The defendant's dilatory reply on May 7, 1965 to plaintiff's last call for protection on April 29, 1965 was not a retraction of the disclaimers. The policy provided in clause 7 that the plaintiff would be indemnified only for amounts actually paid and the defendant had pleaded nonpayment as a defense. Regarding the prohibition in clause 8 of the policy against settlement by the insured without written consent of the company, it pertained to claims "for which liability is assumed under the policy," which must mean assumed by the company. Since the defendant did not assume liability for the Bethlehem claim, this provision never became operative. Moreover, by flatly disclaiming any liability under the policy, the defendant disbarred itself from setting up a breach of clause 8 as a defense to liability on the policy, Insurance Co. of North America v. Newtowne Mfg. Co., 1 Cir., 1951, 187 F.2d 675, 685. The defendant has argued against this conclusion on the ground that, when it wrote the letters disclaiming liability, no lawsuit by Bethlehem was pending against the plaintiff and therefore the letters did not amount to a waiver, citing Marvel Heat Corp. v. Travelers Indemnity Co., 1950, 325 Mass. 682, 92 N.E.2d 233. But the policy involved in that case provided, "No action shall lie against the company * * * until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant, and the company," and obliged the company to defend any suit against the insured. Such provisions were not contained in the policy here at issue and the court considers their omission to be significant. Fulton was faced with the prospect that its liability to Bethlehem would be increased by interest and costs of litigation which it would have to bear. Bethlehem's claim was well-documented and authentic. An insured in the plaintiff's circumstances should not be required to withhold payment from a claimant until after it has gone through the motions of inviting and answering a lawsuit. Such a requirement would be

contrary to the public policy of guarding the courts against unnecessary litigation.

The defendant is liable to the plaintiff for the reasonable costs of repairing the damaged tailstock, to be ascertained at a later hearing.