## K. F. JORGENSON v. GIRARD FIRE & MARINE INSURANCE COMPANY AND ANOTHER.[1]

June 10, 1949.

No. 34,953.

*Henry Nycklemoe*, for appellant.

*Field, Field & Arvesen* and *Clausen, Hirsh & Miller*, for respondent.

Loring, Chief Justice.

Plaintiff appeals from a judgment in favor of defendant Girard Fire & Marine Insurance Company, hereinafter referred to as defendant.

[1]Reported in 38 N. W. (2d) 209.

Plaintiff owned a 14-foot self-propelled combine, which was damaged while being transported in his truck near Concordia, Kansas. Defendant had issued a policy of insurance which contracted to insure plaintiff against loss or damage to the combine caused by fire, lightning, and transportation. As to transportation, the policy described the coverage as "by the stranding, sinking, burning, collision or derailment of any conveyance in or upon which the automobile [combine substituted for automobile] is being transported on land or on water." The sole question is whether the policy covered a collision in which the combine being thus conveyed struck another vehicle before the conveyance on which it was loaded struck it, causing the damage to the combine for which this suit was brought.

Plaintiff's employe and truck driver loaded the combine onto a truck for the purpose of hauling the machine to the southern states for the 1947 harvest, as was customary in midwest grain-growing areas. It was firmly anchored to the truck, which was a 1946 Chevrolet 1½-ton truck, with a 14-foot box platform bed, also owned by plaintiff. The truck platform bed was 8 feet wide. The combine, including its cutter bar, was 15 feet wide. The machine was loaded so that 5½ or 6 feet of the cutter bar projected beyond the right edge of the truck body. It would not have been possible to load the combine so that it did not project beyond the edge of the truck without removing the cutter bar. Ordinary automobiles could go underneath the projections of the combine, which extended over the road on either side.

In June 1947, the truck was near Concordia when the driver came upon two trucks at the foot of a hill. One truck was stalled. The other was in front of it, stopped so that its driver could help make repairs on the stalled truck. Plaintiff's driver stopped, then started in low gear to go around the trucks to the left. Just as the platform on plaintiff's truck was even with the back end of the stalled truck, the front wheel of plaintiff's truck dropped into a washout on the road. This caused the load to sway toward the left, after which it swayed back toward the stalled truck. The outside edge of the cutter bar of the combine caught the corner of the stalled truck,

doing injury to both trucks and combine. It is undisputed that the first contact between the conveying vehicle and the stalled truck was *after* the cutter bar caught the corner of the stalled truck.

Pertinent provisions of the policy are stated in a footnote.[2]

The case was tried to the court, which found the facts in substance as heretofore stated and reached the conclusion that the loss was not within the collision provision of the policy and that consequently defendants were entitled to judgment. There was no motion for a new trial or substituted findings.

The question presented for decision is whether the policy, properly construed, covered the damage to the combine. This is a case of first impression in Minnesota, and similar clauses in insurance policies have received dissimilar interpretations in other jurisdictions. The case is important here because of the practice of farmers in this state, who, in order to justify their heavy investment in farm machinery, convey it to southern states on trucks and follow the seasonal farming operations as such operations move north.

The general terms of the policy before us cover loss by "Fire, Lightning and Transportation." Then, in a later clause relative to transportation, it describes such losses as "by the stranding, sinking, burning, collision or derailment of any conveyance in or upon which

| | | Actual Cash Value | Net Rate | Girard Premium |
|---|---|---|---|---|
| [2]"C Fire, Lightning and Transportation | | $3800.00 | $.75 | $28.50 |

\* \* \* \* \*

| "Model | Trade-Name | Body Type; \* \* \* | Serial Number |
|---|---|---|---|
| 21-A | Massey-Harris | Self Propelled Combine-14Ft. | U3389 |

\* \* \* \* \*

"Coverage C—Fire, Lightning and Transportation

"To pay for loss of or damage to the automobile, hereinafter called loss, caused (a) by fire or lightning, (b) by smoke or smudge due to a sudden, unusual and faulty operation of any fixed heating equipment serving the premises in which the automobile is located, or (c) by the stranding, sinking, burning, collision or derailment of any conveyance in or upon which the automobile is being transported on land or on water."

A farm tractor endorsement in the policy covered the combine, so that where the word "automobile" appears in the coverage clause the policy refers to the combine in question.

the automobile [combine] is being transported on land or on water." Here, the property insured was specifically described as a 1946 "Model 21-A, Massey-Harris Self Propelled Combine-14Ft. Serial Number U3389." That description has an important bearing upon the mutual intent of the parties as to the risks to be assumed. Here, the combine was so constructed that, without removing the cutter bar, it could not be placed upon the truck without extending over the sides of that conveyance. When anchored securely to the truck, as it was in the case at bar, it would extend over the sides of the vehicle and would, naturally, first come in contact with any roadside obstruction with which the truckload might come in contact.

All of these circumstances must be taken into consideration in connection with the proper construction to be placed upon the clauses in the contract of insurance, because those circumstances were in the minds of the parties to the contract and would naturally be within their contemplation in reference to it. To construe the words "any conveyance" as limiting the coverage of the word "collision" to the conveyance alone, as distinguished from the unit composed of the truck and its load, would be to reach an absurd result. In the case of C. & J. Commercial Driveway, Inc. v. Fidelity & Guaranty F. Corp. 258 Mich. 624, 242 N. W. 789, a similar policy was before the supreme court of Michigan, where an automobile was being carried on a truck constructed for that purpose. It was loaded in the usual way with the front end of the forward automobile elevated above and at the rear of the cab of the truck. While the truck was passing over an old-fashioned, wooden covered bridge near Bardstown, Kentucky, the front end of the forward automobile came in contact with an overhanging plank and was damaged. The policy there involved covered "accidental collision of the truck with any other automobile, vehicle or object." The truck itself did not come in contact with the bridge, and defendant company denied liability. The Michigan court, however, held that the words, though standing by themselves were clear enough, must be considered in relation to the other language of the policy in order to ascertain

what meaning the parties mutually intended to give them which would be consistent with the object and purpose of the insurance. The court, following the case of Importers' & Exporters' Ins. Co. v. Jones, 166 Ark. 370, 373, 266 S. W. 286, 287, held that the words used were descriptive and not limitations upon the word "transportation" and that, in such relation, they expressed the plain, common-sense meaning of the contract.

Perhaps, the most thoroughly considered and best expressed opinion covering the principles here involved is that of the superior court of Pennsylvania in Bucks County Const. Co. Inc. v. Alliance Ins. Co. 162 Pa. Super. 153, 56 A. (2d) 338. In that case, the damaged property being conveyed was a power-driven shovel, so large that of necessity it extended beyond both sides of the vehicle in which it was being transported. The damage occurred when the shovel collided with a concrete pillar under the Thirtieth street station of the Pennsylvania Railroad Company in Philadelphia. The vehicle on which it was loaded did not collide with any object. Defendant insurance company denied liability for that reason. The court said (162 Pa. Super. 155, 56 A. [2d] 339) :

"There is no ambiguity in the language of the limitation of the policy relating to damage by collision. But notwithstanding the clear meaning of words in the above clause of the policy, a broader coverage may be inferred from the circumstances which indicate a wider mutual intent. 'While it is of course true that where the language of an insurance policy is clear and unambiguous it cannot be construed to mean otherwise than what it says (Urian v. Insurance Co., 310 Pa. 144, 150-51, 165 A. 21) yet it must be given a reasonable interpretation, in the light of the subject-matter and the situation of the parties at the time the contract was made, and such construction must not be manifestly absurd, nor effectually prevent a recovery under all circumstances': Janney v. Scranton Life Ins. Co., 315 Pa. 200, 203, 173 A. 819, 820. 'Insurance policies, like statutes, must receive "a sensible construction" ': Albert v. Mut. B.

Health & Acc. Assn., 350 Pa. 268, 38 A. 2d 321. See also Perry v. Southern Surety Co., 78 Pa. Superior Ct. 222.

"The policy by its name, 'Scheduled Property Floater Policy', written on its 'Contractors Equipment Floater Form' implies *protection to the property* described in the policy, while in transit. And the character and bulk of the unusual items of property, specifically identified and described, has an important bearing upon the mutual intent of the parties, under their contract, as to the risks intended to be assumed. The schedule of the policy lists and describes eleven items of property, for the most part heavy contractor's equipment, viz: two Lorraine Moto-Cranes, two Bucyrus-Erie shovels, two tractors, three clam shells and two pumps—of a total value of $44,236.50. For an additional premium three other pieces of similar big equipment, of a total value of $18,331.44 were added to the schedule. Contractors must transport their equipment from job to job over highways by truck, and common prudence suggests the importance of insurance of machinery so valuable, against damage in transit. Plaintiff undoubtedly believed that it had such protection. It was stated at the argument, though not so stipulated in the lower court, that the damaged property described in the schedule as Bucyrus-Erie Shovel #10-4 No. 18193 was so large that it of necessity extended beyond both sides of the trailer in transit. There is evidence in a fact which *was* stipulated in the lower court on which an inference to that effect (and we must give the plaintiff the benefit of it) rests. The power shovel here must have been so large as to extend beyond the side of the truck else it could not have been damaged without contact of the truck with the pillar. A concrete pillar, upright and immobile, could not have come in contact with the load otherwise. Because of the bulk of this equipment, specifically described in the policy of insurance, the insurer should not be relieved from liability if the loaded shovel extended over the sides of the conveyance, thus protecting the conveyance from colliding with anything, but subjecting the shovel to the whole impact of collision."

Under similar, though in some cases not identical, clauses, there has been held to be coverage of property in transportation where there was collision with or sinking of the load, though not of the conveyance. Wheeler v. Globe & Rutgers F. Ins. Co. 125 S. C. 320, 118 S. E. 609; Importers' & Exporters' Ins. Co. v. Jones, 166 Ark. 370, 266 S. W. 286; Gould Morris Elec. Co. v. Atlantic F. Ins. Co. 229 N. C. 518, 50 S. E. (2d) 295; Liverpool & L. & G. Ins. Co. Ltd. v. Jones, 207 Ark. 237, 180 S. W. (2d) 519; Continental Ins. Co. v. Griffin (Tex. Civ. App.) 218 S. W. (2d) 350; Freiberger v. Globe Ind. Co. 205 App. Div. 116, 199 N. Y. S. 310. In the Gould case, the supreme court of North Carolina cited with approval the Michigan and the Pennsylvania cases above cited. It distinguished the cases of Mendelsohn v. Automobile Ins. Co. 290 Mass. 228, 195 N. E. 104, and Barish-Sanders Motor Co. v. Firemen's Fund Ins. Co. 134 Neb. 188, 278 N. W. 374, both relied on by defendant here. In the Mendelsohn case, the Massachusetts court took the position that the risk there involved—a load of chair frames—was always within the control of the insured and therefore could not be held to be within the contemplation of the parties. In the Barish-Sanders case, where the load collided with an overpass, the phrase in the coverage of the policy "and collision of the load with any object" had been stricken out by the parties to the contract, so the court justifiably regarded such coverage as excluded by intent of the parties.

The Arkansas and South Carolina cases cited above involved policy provisions identical with the one at bar relative to the sinking of the conveyance (in those cases a ferry) upon which the insured vehicle was being transported. In neither of these cases did the ferryboat itself sink. The insured vehicle was dropped into the water. In both cases, the court held that the word "sinking" was one of description, not of limitation. The Arkansas opinion commented, with disapproval, on the case of British Empire Underwriters v. Wampler, 62 Dom. L. R. 599, restoring 54 Dom. L. R. 657, relied upon by defendant here.

In City of Marshall v. Gregoire, 193 Minn. 188, 259 N. W. 377, 98 A. L. R. 711, where this court had under consideration the language of a surety bond which literally exempted the surety from losses caused by failure of any bank or other depository, we held that the bond covered losses unless the depository was properly designated, as required by statute. In its opinion after reargument, this court said (193 Minn. 197, 259 N. W. 381):

"* * * There is no occasion for anything more than mention of the abundance of authority for the *construction*, not of contracts alone, but also of statutes and even constitutions, *so as to accomplish the purpose of the document and avoid absurdity. In that process and to that end, literal meaning frequently suffers.*" (Italics supplied.)

We conclude in the case at bar that the circumstances under which the contract was made all point to the conclusion that the policy covered damage to the combine. There was no clause in the policy excepting from its coverage property negligently loaded. Wheeler v. Globe & Rutgers F. Ins. Co. 125 S. C. 320, 118 S. E. 609.

The judgment is reversed, and, since the parties stipulated that the damage to the combine amounted to $788.50, the case is remanded with instructions to enter judgment for plaintiff in that amount, plus interest, costs, and disbursements.

### On Petition for Rehearing.

On July 8, 1949, the following opinion was filed:

Per Curiam.

In their petition for rehearing, counsel for respondent say that this court erred when it—

"founded its decision on the case of Wheeler vs. Globe & R. F. Insurance Company, 125 S. C. [320], 325, 118 S. E. 609 and other cases cited in the Court's Opinion, all of which rely upon the Wheeler case as the foundation of their authority and that the Court did not mention, and apparently overlooked, the case of Johnson vs. Glen[s] Falls Insurance Company (South Carolina)

[131 S. C. 253], 127 S. E. 14, 40 A. L. R. 993, from the same state which overruled the Wheeler Case and removed the Wheeler case as a controlling decision, * * *."

In their original brief, counsel argued that the supreme court of South Carolina "repudiated" the rule adopted in the Wheeler case. While writing its initial opinion, this court did not consider that that argument merited consideration, since an examination of the Johnson case demonstrated that counsel's argument was untenable. The Wheeler case is nowhere cited in the majority opinion in the Johnson case. The concurring opinion of Mr. Acting Associate Justice Lumpkin expressly states (Johnson v. Glens Falls Ins. Co. 131 S. C. 258, 127 S. E. 16) :

"* * * After a careful study of the facts here presented as applying to defendant's motion for directed verdict, I am convinced that an entirely different issue arose in this case than in the Wheeler Case," ·

distinguishing the latter upon its facts. The question of negligence in loading, which was held not to be a defense in the Wheeler case, since no policy provision provided such a defense, was nowhere mentioned as an issue in the Johnson case. The sole issue considered in the majority opinion in the Johnson case was the question of construction of the terms of the policy—terms different from those in the instant case. At most, the Wheeler case was distinguished on its facts by the Johnson case as to the construction of differing policy words. The negligence point was left utterly untouched by the Johnson decision.

Counsel's research failed to uncover the cases of Liverpool & L. & G. Ins. Co. Ltd. v. Jones, 207 Ark. 237, 180 S. W. (2d) 519; Continental Ins. Co. v. Griffin (Tex. Civ. App.) 218 S. W. (2d) 350; or Freiberger v. Globe Ind. Co. 205 App. Div. 116, 199 N. Y. S. 310, cited in our principal opinion. They do not now contend that these are inapplicable authority. They have rested their petition for rehearing on the effect of the Johnson case. They evidently failed to observe that the Liverpool & L. & G. Ins. Co. decision, in common

with other cases cited in the original opinion, refused to follow the theory of the Johnson case. The Arkansas court followed its previous decision in Importers' & Exporters' Ins. Co. v. Jones, 166 Ark. 370, 266 S. W. 286, which had relied heavily upon the Wheeler case, although the Johnson case was decided shortly after the Importers' & Exporters' Ins. Co. case. Not only has the Johnson opinion been ignored in other jurisdictions, but it is also against the weight of authority as the cases now stand.

This court has not "overlooked" the demountable construction of the cutter bar. Our opinion describes the cutter bar and states (229 Minn. 49, 38 N. W. [2d] 210):

"* * * It would not have been possible to load the combine so that it did not project beyond the edge of the truck without removing the cutter bar."

Furthermore, the whole opinion treats the insurable risk as the entire machine described in the policy by make, model, serial number, and "Self Propelled Combine-14Ft." As stated in the opinion, that "description has an important bearing upon the mutual intent of the parties as to the risks to be assumed." This disposes also of respondent's argument that the rule of the case of Bucks County Const. Co. Inc. v. Alliance Ins. Co. 162 Pa. Super. 153, 56 A. (2d) 338, has no application.

Petition for rehearing denied.