AMERICAN AUTOMOBILE INS. CO. v.
FOX. (No. 7771.)

(Court of Civil Appeals of Texas. Galveston.
Nov. 20, 1919. Rehearing Denied
Dec. 18, 1919.)

1. INSURANCE ⊚⟹424—FERRYBOAT SUBMERGING, LOSING AUTOMOBILE, AND RISING AGAIN MADE INSURER OF AUTOMOBILE LIABLE ON CLAUSE AGAINST SINKING.

In an action on a policy, insuring an automobile against sinking in conveyance by water, where the petition alleged that a ferry carrying the car sunk when the car was on it,

which was proved, it is immaterial that by way of implication the petition also charged the ferry was held down at the bottom of the stream by the car, and proof of the mere averment of sinking would fasten liability on the insurer, though there was showing that after the first sinking with the car the ferry, relieved of weight by the car's having slid off, rose again to the surface.

2. INSURANCE ⊚⟹424 — DEFENSE OF UNSEAWORTHINESS NOT APPLICABLE TO CONTRACT INSURING AUTOMOBILE FROM SINKING WHEN TRANSPORTED BY WATER.

In an action on a policy insuring an automobile from fire, explosion, lightning, burning, derailment, collision, and stranding or sinking of any conveyance by land or water in which the car was being transported, the defense of unseaworthiness of the ferry in which the car was being carried when the ferry sunk was not applicable to the particular contract, in view of the nature of the risk.

3. APPEAL AND ERROR ⊚⟹173(14)—WAIVER OF DEFENSE OF UNSEAWORTHINESS OF FERRY CARRYING AUTOMOBILE BY FAILURE TO SET UP.

In an action on a policy, insuring an automobile against sinking while being transported by water, the defense of breach of any implied warranty of seaworthiness of the ferry in which the car was being transported was waived by failure to set it up by pleading or otherwise in the trial court.

4. APPEAL AND ERROR ⊚⟹1033(5)—INSTRUCTION AS TO DAMAGES IN FAVOR OF INSURER NOT INJURIOUS TO IT.

In an action on a policy insuring an automobile against sinking when being transported by water, such sinking of a ferry having occurred, where the policy provided recovery could be had for what it would have cost insured to repair or replace damaged parts, instruction on damages, enlarging to some extent on such provision by limiting amount of recoverable damages to what it would take to repair parts properly repairable, etc., being more liberal than the policy in the insurer's favor, held not prejudicial to it.

5. INSURANCE ⊚⟹665(4) — EVIDENCE SUFFICIENT TO SHOW DAMAGES OF $1,300 TO AUTOMOBILE BY SINKING.

In an action on a policy insuring an automobile against sinking when in transport by water, the car having sunk with a ferry into salt water, evidence as to damages held sufficient to sustain the jury's finding of $1,300 in favor of insured.

6. INSURANCE ⊚⟹670—FINDINGS ON DAMAGES TO INSURED AUTOMOBILE NOT CONFLICTING.

In an action on a policy insuring an automobile against sinking during transport by water, unconnected findings of $1,300 as the total damage done the car, and also in such amount as the amount of damage done before the automobile slipped off the sunken ferry, held not necessarily in conflict, in view of the charge permitting the jury to deduct any sum from the total damage they might find due to the negligence of plaintiff owner or his agents

in failing to get the automobile out of water sooner.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Action by E. L. Fox against the American Automobile Insurance Company. From judgment for plaintiff, defendant appeals. Affirmed.

Andrews, Streetman, Burns & Logue (later Andrews, Streetman, Logue & Mobley) and W. L. Cook, all of Houston, for appellant.

E. T. Chew, of Houston, for appellee.

GRAVES, J.  Alleging that his automobile had been damaged from being submerged in salt water as the result of the sinking of a ferry upon which he had driven it for transportation across Goose Creek, in Harris county, Tex., Dr. Fox sued the insurance company to recover the loss, under the terms of a policy it had issued him on the car. He was therein insured "from the 3d day of August, 1916, at noon, to the 3d day of August, 1917, at noon, standard time at the place where this policy is countersigned, against actual loss or damage to the body, machinery, equipment and extra parts of each automobile described in statement IV of the schedule of statements to an amount not exceeding the amount therein specified on each automobile, if caused, while this policy is in force, by fire arising from any cause whatsoever, including explosion, self-ignition and lightning; and also against such loss or damage, if caused by the burning, derailment, collision, stranding or sinking of any conveyance, by land or water, in or upon which such automobile is being transported."

There is also the further provision:

"The company shall not be liable hereunder for any loss or damage to any automobile used * * * (c) beyond the limits of the United States, Canada and Mexico, or between ports within said limits."

Pursuant to a jury's verdict fixing the amount of the damage, a judgment against the company was entered below, from which it has appealed.

The chief defense in the trial court was that there was in fact no sinking of the ferry within the terms of the policy and as pleaded by the plaintiff, while in this court—for the first time and as the leading contention—it is urged that the appellee was not entitled to recover, because, it is said, the policy sued on carried an implied warranty upon his part of the seaworthiness of the ferry for the use he attempted to make of it, which obligation had been breached, in that the ferry was conclusively shown by his own pleadings and by all the proof not to be so.

In responding on trial of the cause to special issues submitted to them, and after being told by the court that the word "sink," as used in the policy, meant "to become wholly submerged, to retire entirely beneath or below the surface of the water," the jury found that the ferry did sink while the automobile was on it, and that its sinking caused the car to be precipitated into the creek. Since we think this finding has sufficient support in the testimony, consideration of it upon appeal is of no further concern, unless there was some prejudicial error of omission or commission in its being submitted at all, which appellant urges was the case.

[1] Through objections to the charge as given, and by a number of requested special charges, it insisted that there could be no sinking within the meaning of the policy and of the averments of plaintiff's petition, unless the ferry went underneath the water and remained there, and that the jury should have been so told. This contention rests upon the further claim that the plaintiff had alleged the particular manner of the sinking; that is, that the ferry went down and remained under the water—held there by the weight of the automobile—and was bound thereby to the extent that the jury should not have been permitted to find a sinking not so expressly limited and defined.

We think the position untenable, and without separate discussion overrule all assignments presenting the different phases of it.

The material and important issue was, Did the ferry sink while the automobile was on it? This essential fact was directly alleged and fully proven; it is a matter of no consequence that, by way of amplification, the petition then went further, and charged that the ferry was held down at the bottom of the stream by the car, because proof of the first averment would fasten liability upon the insurer, and this notwithstanding the developed fact that after first sinking with the car upon it, the ferry, being relieved of the weight by the car's having slid off into the water, rose again to the surface.

[2] Recurring now to the defense of unseaworthiness of the ferry, so primarily presented in this court: We conclude that it is not available, because not applicable to the kind of insurance contract here involved. In doing so, it is deemed unnecessary to determine whether or not an implied warranty of seaworthiness of the vessel inheres in time policies of strictly marine insurance, since we do not think the ordinary policy of automobile accident insurance, like the one here sued upon, is of that character. The nature of the risk is essentially different from that applying to hazards of the sea, if for no other reason, in that the subject of it, the automobile, was itself contemplated to be used as a means of conveyance, in reference to which no such condition as seaworthiness, or the lack of it, could have been thought of. Consequently the incidents of an undertaking to provide against "the perils of the sea,"

or other hazards to which a seagoing vessel, or a cargo carried in one, may become subject, do not attach. The parties here by plain stipulations made another kind of contract. Without the mention of seaworthiness in any connection, they simply agreed that, if the appellee should suffer loss or damage during the fixed period of one year as a result of the "stranding or sinking of any conveyance, by land or water, in or upon which such automobile is being transported," provided the car was not used "beyond the limits of the United States, Canada and Mexico, or between ports within said limits," the appellant would pay it. This proviso itself not only contains the sole limitation of liability found in the instrument, but also strongly tends to distinguish the undertaking from one having to do with marine risks.

This implication of responsibility of the owner or charterer for the condition of his ship as a condition precedent to his recovering for the insurance thereon was one of the peculiar and rigid rules of the common law, applicable more especially, if not exclusively, to policies of marine insurance covering a particular voyage, rather than to those merely running generally for a fixed period of time. In England the implied warranty seems to have been confined to single trip or voyage policies (Gibson v. Small, 4 H. L. Cas. 353; 1 C. L. R. 363; 17 Jur. 1131, 14 Eng. Rul. Cas. 86, and note; Dudgeon v. Pembake, 2 App. Cas. 284, 46 L. J. Exch. 409, 36 L. T. N. S. 382, 25 W. R. 499, 14 Eng. Rul. Cas. 105; Jones v. Ins. Co., Fed. Cas. No. 7470), while in America, under certain limitations, it appears to arise upon time policies as well (26 Cyc. p. 645; Ins. Co. v. Burnett, 29 Tex. 442; M. Ins. Co. v. Morrison, 62 Ill. 242, 14 Am. Rep. 93).

But to read these arbitrary doctrines of the ancient law merchant and of the common law covering strictly marine risks only into a plain policy insuring a modern automobile for an extended period against damage or loss from any sort of accident, while being used by land or water anywhere within the limits of the United States, Canada, or Mexico, save alone between ports within such limits, would not, in our opinion, be the mere recognition of a condition with respect to which the contract was silent, but would vary its terms and legal effect—something a court may not undertake.

[3] Furthermore, as already indicated, no breach of any implied warranty of seaworthiness of the ferry was pleaded by the appellant, nor was the point otherwise raised below, and we are inclined to agree with the appellee that it was such defensive matter as was waived by the failure to set it up. Guy et al. v. Citizens' Mut. Ins. Co. (D. C.) 30 Fed. 695; Fireman's Fund Ins. Co. v. Globe Nav. Co., 236 Fed. 623; Nome Beach Lighterage & Tr. Co. v. Munich Assur. Co. (C. C.) 123

Fed. 821–825; Batchelder v. Ins. Co. (D. C.) 30 Fed. 459.

Some of the additional assignments assail the court's action in asking the jury whether the automobile came in contact with the salt water before it left the ferry, and, if so, what part of the total damage done did that contact alone cause, as well as the sufficiency of the evidence to sustain the findings made on both issues? Others challenge the correctness of the measure of damages submitted, and complain of the actual damage found as being excessive.

After careful consideration of them all, in the light of the entire record, it is thought no prejudicial error is shown in any of these respects. The court first inquired generally as to how much the automobile had been damaged by coming in contact with salt water, without reference to whether that occurred before or after it left the ferry. The question was then particularized by further asking whether the car had come in contact with the water before it left the ferry, and in the event of an affirmative finding on both these issues, designation of the amount attributable to the car's contact with the water before it left the ferry was requested.

[4] In this connection, and upon the measure of damages, this was the charge:

"In arriving at the damages inquired about in this issue you will take into consideration the reasonable, fair, market value of car just prior to the accident on the ferry, and its reasonable, fair, market value just after it had suffered the damage from salt water as shown by the evidence, limiting the amount of damages which you may allow to what it would take to repair the parts that could be properly repaired, and to replace the parts that were necessary to be replaced in the car to put the same in substantially as good a condition as it was just prior to the accident. And should you further believe from the evidence that plaintiff, or those whom he selected for the purpose, did not exercise ordinary care in the matter of removing said automobile from the water and giving it further attention after it had been submerged in the water, and that failure in this regard caused additional damage over and above what the car would have sustained had he, or those whom he selected, used such care in the respect just mentioned, you will not include such amount in your answer to this question.

"By the term 'ordinary care' is meant such care as a person of reasonable prudence would have used in the same or similar circumstances."

The jury answered that the car had come in contact with the water before leaving the ferry, and fixed both amounts so inquired about at $1,300.

We find no fault with the charge, indeed considering it somewhat more favorable to appellant on the measure of damages than it was entitled to under the contract it had made. The policy expressly provided that a

recovery could be had for "what it would then cost the assured to repair or replace the same (meaning the damaged parts) with material of like kind and quality." In the quoted charge the trial court enlarged to some extent upon this by limiting the amount of recoverable damages to "what it would take to repair the parts that could be properly repaired, and to replace the parts that were necessary to be replaced, so as to put same in substantially as good condition as it was prior to its going into the water," thus slightly liberalizing the policy in appellant's favor.

[5, 6] Neither do we think the jury's findings upon these questions unsupported by the testimony. It was shown that the machinery and appliances of the car were hot when it went into the water, that under such circumstances, it being suddenly brought into contact with salt water and then exposed for any considerable length of time to the open air, whether allowed to remain long in the water or not, would greatly damage it, and that it was thus submerged in salt water prior to sliding or slipping off of the ferry, Consequently a finding that, even if the car had been taken out of the salt water at once on parting from the ferry, and then allowed to remain on the bank in the open air from Sunday afternoon until Tuesday following, as was done, it would have been damaged to the extent of $1,300, could not be said to be unsupported; nor are the two unconnected fixings of the same amount as the total damage and also as the amount of damage done before the separation of the automobile and the ferry necessarily in conflict or inconsistent with each other, because, in first answering as to the damage in general terms, the jury were permitted by the terms of this charge, given in connection with that issue, to deduct any sum from the total damage that they might find arose out of or was due to any negligence on the part of the appellee or his agents in failing to get the automobile out of the water and to town sooner than he did.

So that, under all the evidence, the jury could have found the damage to have been practically the same without reference to when the car parted from the ferry, or, in responding to this issue as first submitted, could and may have primarily determined (not to say probably did determine) that the total damage to the car had been in excess of $1,300 which they had then reduced down to that sum by deducting whatever amount they had also determined to be the result of the appellee's negligence in not sooner getting the car in out of the open air.

Under these conclusions the judgment should be affirmed, and that order will be entered.

Affirmed.