NATIONAL SURETY MARINE INSURANCE CORPORATION
v. TWEED EVERETT FAILING.

No. A-1475. Decided April 7, 1948.
Rehearing overruled May 19, 1948.
(211 S. W., 2d Series, 567.)

608

*Vinson, Elkins, Weems & Francis, C. M. Hightower* and *W. D. Deakins, Jr.,* all of Houston, for petitioners.

*Andrews, Kurth, Campbell & Bradley* and *F. L. Andrews,* all of Houston, for respondent.

MR. JUSTICE SIMPSON delivered the opinion of the Court.

Tweed Everett Failing brought this suit against the National Surety Marine Insurance Corporation growing out of the loss of certain machinery and equipment which he claimed was covered by a policy of insurance the company had issued to him. The trial was before the court upon an agreed statement of facts, and judgment was rendered in favor of the company. The Court of Civil Appeals reversed the judgment of the trial court and rendered judgment for Failing. 205 S. W. (2d) 139.

There is involved here the construction of the insurance policy the company had issued to Failing. He owned certain drilling equipment which was used in testing and sampling subsurface mineral structures, and which was permanently mounted on an automobile truck. While the equipment was being used for drilling in Polk County, Florida, cavities in the earth were encountered and it was decided to abandon drilling. The crew

was undertaking to remove the drill stem from the well bore when the earth caved in and cratered, and Failing's equipment sank into this crater and was lost. This equipment was scheduled in the policy and insured against those hazards which the policy covered to the extent of $3,000.00, the sum for which suit was filed.

The essential parts of the policy will be quoted, and as it is partly printed and partly typewritten, to differentiate what is printed from what is typewritten, the typewritten parts are italicised:

"TRANSPORTATION POLICY

NATIONAL SURETY MARINE INSURANCE CORPORATION

"* * * IN CONSIDERATION OF THE STIPULATIONS NAMED HEREIN AND Premium of TWO THOUSAND TWO HUNDRED THIRTY ONE AND *31/100* Dollars *($2,231.31),* Insures TWEED EVERETT FAILING * * * for the term of THREE YEARS * * * on Insured Property, namely, goods and merchandise, including packages, consisting of *scheduled property as per form attached,* their own or held by them in trust, or on commission, or on consignement, or on which they have made advances, or sold but not delivered, to an amount not exceeding TWENTY FIVE THOUSAND AND NO/*100* Dollars *($25,000.00),* in any one casualty, either in case of partial or total loss, or salvage charges, or expenses, or all combined, while in transit *or otherwise within the limits of the Continental U. S. and Canada.* * * *

"THIS POLICY SHALL NOT BE VALID UNLESS ENDORSEMENT ISSUED BY THIS COMPANY IS ATTACHED HERETO AND, FURTHER, IS SUBJECT TO THE STIPULATIONS, CONDITIONS WARRANTIES AND DECLARATIONS CONTAINED ABOVE, ON THE BACK HEREOF AND SUCH OTHERS AS MAY BE ENDORSED HEREIN OR ADDED HERETO, ALL OF WHICH ARE HEREBY MADE A PART OF THIS POLICY.
\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

"*It is the intent of this policy (subject to all terms and conditions) to cover the described equipment together with all appurtenances forming part of the individual unit.*

"THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED,
INSURES AGAINST DIRECT LOSS OR DAMAGE BY:

"(a) *Fire and lightning;*
"(b) *Explosion, excepting explosion originating within steam boilers or internal explosion;*
"(c) *Cyclone, Tornado, Windstorm and hail;*

*"(d)* Earthquake;

*"(e)* Collapse of Bridges;

*"(f)* Collision, derailment or overturning of land conveyances while the insured property is being transported thereon;

*"(g)* Marine perils while on regularly operated barges, ferries and/or in cars on transfers operated in connection therewith;

*"(h)* Riot, Riot attending a strike, and Civil Commotion;

*"(i)* Theft of an entire item of equipment, whether or not comprising part of operating unit;

*":(j)* Flood, (meaning thereby the rising of navigable waters);

*"(k)* Collision of insured property with any other object, except as hereinafter provided.

"THIS POLICY DOES NOT INSURE AGAINST

*"(a)* Loss or damage occasioned by the weight of a load exceeding the registered lifting capacity of any machine;

*"(b)* Loss or damage to automobiles, motor trucks or other automotive equipment designed for highway use, (except tractors of caterpillar type, automobile trailers and exploration and drilling equipment usual to assured's business, mounted on automobiles or motor trucks), plans, blue prints, designs, or specifications or to underground property;

*"(c)* Loss or damage to any property which has become a permanent part of any structure;

*"(d)* Loss or damage to dynamos, exciters, lamps, switches, motors or other electrical appliances or devices caused by electrical injury or disturbance whether from artificial or natural causes unless fire ensues and then for the loss by fire only;

*"(e)* Wear, tear, latent defects and/or gradual depreciation;

*"(f)* Loss if, at the time of loss or damage, there is any other insurance which would attach if this isuance had not been effected, except that this insurance shall apply only as excess and in no event as contributing insurance and then only after all other insurance has been exhausted;

*"(g)* Loss or damage occasioned by war, invasion, hostilities, acts of foreign enemies, civil war, rebellion, insurrection, military or usurped power or martial law or confiscation by order of any government or public authority or risks of contraband or illicit trade."

It was stipulated that there was no record of an earthquake at or near the point where the equipment was lost. Nor was there any overturning of the truck upon which the machinery

was mounted. On the contrary, the truck, except for listing about twenty degrees, remained upright as it sank and came to rest at the bottom of the crater. It is conceded by Failing that a cave-in or cratering such as caused the loss is not enumerated in the endorsement attached to the policy as one of the eleven specific risks covered by it.

The Court of Civil Appeals held that the insertion of the language "or otherwise within the limits of the Continental U. S. and Canada" had the effect of extending complete coverage except as expressly limited by the exclusions enumerated in the policy. It will be noted that this policy was designated by its printed heading as a "Transportation Policy," and that the printed provision insured against loss only while the property was *in transit*. The effect of the typewritten language "or otherwise" was to extend the coverage to loss from risks insured against regardless of whether the property was in transit at the time of damage. Had this language not been added, the property would not have been protected under the policy unless it was "in transit," and, accordingly, since Failing's equipment was not being transported at the very time it sank into the crater, it might have been plausibly argued that the policy did not extend to the mishap. But this language did not in any sense change the nature of the risks insured against; it merely enlarged the printed provision so as to insure Failing's property whether in transit or at rest when damaged. The Court of Civil Appeals fell into error in giving this language so comprehensive a significance as to extend the policy's coverage to every conceivable loss.

The policy provides at the outset that in case of loss, whether in transit or otherwise, anywhere within the continental United States and Canada, the property scheduled "on a form attached" was insured to an amount not exceeding $25,000.00 in any one casualty. Then followed, in printed, capitalized letters, the declaration that the policy "shall not be valid unless endorsement issued by this company is attached hereto." This capitalized portion is in effect a caveat, clear, even imperious in its nature, warning the assured that he must consult the endorsements attached to the policy, since without endorsements he had no insurance. When he inspects the endorsements he finds, after certain general warranties and conditions and a scheduling of the property insured, a tabulation underneath a typewritten, capitalized headline of eleven different risks, lettered (a) to (k), against which the headline states the policy insures. Then is listed, equally clear, against what the policy

does not insure. So here, and not elsewhere in the policy, is supplied a particularization of the risks against which the insurance is written. These endorsements are so plainly worded, prominently displayed, and simply arranged, that even a cursory examination of the instrument shows beyond peradventure the perils which the policy covers. And under the stipulated facts the loss in suit is certainly not a casualty falling within the coverage thus plainly provided.

If the language in the opening sentence of the policy insuring Failing's property up to $25,000.00 "in any one casualty" be construed to mean that Failing was insured against every conceivable casualty except those specifically excluded, there would have been absolutely no use for the parties to list eleven particular risks against which the policy ran. It would ascribe to the parties not only the futile but even the fatuous motive of listing eleven specific perils which the policy was to cover, when other language had already comprehensively included these eleven as well as every other conceivale brisk, save, of course, the listed exclusions.

This contract is plain. To read and understand its meaning and scope is not in the least difficult. The language is neither ambiguous nor vague. It is a simple matter to harmonize every part of the agreement and give them all effect. The parties have plainly contracted that the scheduled property should be insured against loss in any one casualty up to the stated amount if the loss or damage result directly from any one or more of the eleven listed perils. As the parties have so plainly agreed, let them be bound.

The authorities cited by the Court of Civil Appeals and in the briefs of counsel for Failing have been considered. None of those decisions involves a situation like that presented here, but each is readily distinguishable upon the facts from the case at bar.

The judgment of the Court of Civil Appeals is reversed and that of the trial court affirmed.

Opinion delivered April 7, 1948.

MR. JUSTICE SHARP, dissenting.

In my judgment the majority opinion misconstrues the language used in the policy involved here, and disregards certain

fundamental rules that have long been in force and faithfully observed in the construction of insurance policies. I will briefly state the reasons for my dissent:

The original policy is before us, and the facts are undisputed. The insured paid a premium of $2,231.31 to the insurer for this policy. The policy is lengthy, and is partly printed and partly typewritten. The printed part of the policy was not sufficient to express the nature of the coverage, and in order to express the full scope of the coverage there were inserted certain typewritten supplemental matters, such as riders, exceptions, etc. The printed part of the policy insures the property against loss "in any one casualty, * * * while in transit." In addition thereto, there was specifically typewritten therein the further clause, "or otherwise within the limits of the Continental U. S. and Canada." The policy insures respondent against loss "in any one casualty," not only while the property is "in transit," but also "or otherwise within the limits of the Continental U. S. and Canada." The word "casualty" has long been used in insurance contracts, and has a well-defined meaning. See 14 C. J. S., Casualty, pp. 29-32. "Casualty" means accident; that which comes by chance, or without design, or without being a foreseen contingency. Chicago, St. L. & N. O. Ry. Co. v. Pullman Southern Car Co., 139 U. S. 79, 11 S. Ct. 490, 35 L. E. 97; Anthony & Co. v. Karbach, 64 Neb. 509, 90 N. W. 243, 97 Amer. St. Rept. 662; 6 Words and Phrases (Perm. Ed.), pp. 302-307.

Time and experience have developed certain rules for the construction of insurance policies. The insurer selects the language used in a policy, and in order to protect the rights of the insured the language used is construed favorably to the insured. The rule is now well settled that a policy of insurance prepared by the insurer will be construed liberally in favor of the insured and strictly construed against the insurer. Furthermore, if the terms used in the policy admit of two constructions, the construction favorable to the insured will be adopted. McCaleb v. Continental Casualty Co., 132 Texas 65, 116 S. W. (2d) 679; Commonwealth Bonding & Casualty Co. v. Bryant, 113 Texas 21, 240 S. W. 893; Brown v. Palatine Ins. Co., 89 Texas 590, 35 S. W. 1060; Kemper v. Police & Firemen's Ins. Assn. (Tex. Com. App.), 44 S. W. (2d) 978; 24 Tex. Jur., 702-711.

The rule is also well settled that exceptions, and words of limitation in the nature of an exception, are strictly construed against the insurer, like provisions for forfeiture; and this is especially true if the language used in the policy is reason-

ably suceptible of a double construction. *International Travelers'* Assn. v. Yates (Tex. Com. App.), 29 S. W. (2d) 980; American Fidelity & Casualty Co. v. Williams (Civ. App., writ refused, 34 S. W. (2d) 396; Howard v. Missouri State Life Ins. Co. (Civ. App., writ refused), 289 S. W. 114; Warren v. Springfield Fire & M. Ins. Co., 13 Civ. App. 466, 35 S. W. 810; Norwood v. Washington Fidelity Nat. Ins. Co. (Civ. App.), 16 S. W. (2d) 842; 24 Tex. Jur., p. 704, sec. 28.

Policies of insurance in most instances are written for the benefit of the average man, who is not trained or experienced in the technical construction of contracts, and such policies should be construed from his viewpoint. In the case of Lewis v. Ocean Accident & Guarantee Corporation, 224 N. Y. 18, 120 N. E. 56, 7 A. L. R. 1129, Mr. Justice Cardozo, in construing a policy of insurance, said: "* * * our point of view in fixing the meaning of this contract must not be that of the scientist. It must be that of the average man." That opinion was approved by this Court in the case of International Travelers' Assn. v. Francis, 119 Texas 1, 23 S. W. (2d) 282.

The federal courts hold that an insurance contract, any part of which is ambiguous, must be construed strongly against the insurer. Aetna Ins. Co. v. Houston Oil & Transport Co., 5 Cir., 49 F. (2d) 121, certiorari denied Houston Oil & Transport Co. v. Aetna Ins. Co., 52 S. Ct. 12, 284 U. S. 628, 76 L. Ed. 535; Love v. Northwestern Nat. Life Ins. Co., 5 Cir., 119 F. (2d) 251; Texas Digest, Vol. 22, p. 157.

The foregoing rules must be scrupulously observed if this insurance policy is to be correctly construed. In plain language, the policy insures the property of respondent against loss in any one casualty while in transit or otherwise. This was the language selected by the insurer to express the terms of the policy, and there is no difficulty in fixing the liability of the insurance company under this part of the policy. If the policy is to be construed in favor of the insurer and against the insured, the ground or reason for such construction must be found elsewhere in the policy. It is urged that the ground for such construction is found under the items described under "THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED, INSURES AGAINST DIRECT LOSS OR DAMAGE BY" and the item listed under "THIS POLICY DOES NOT INSURE AGAINST." When these provisions of the policy are construed in connection with the other provisions of the policy, they do not nullify the general insuring clause. They do withdraw from the general insuring clause certain risks. The

eleven specific risks enumerated in the policy are not exclusive. The listing of certain risks in the typewritten rider was for the purpose of definitely binding the insurer to the inclusion of such items. The listing of specific risks insured against, such as fire, earthquake, riot, etc., and the listing of exceptions, clearly shows that the policy was not intended to limit the damages insured against to a casualty sustained only *"in transit."* One part of the rider provides that "THIS POLICY DOES NOT INSURE AGAINST" and then enumerates a list of risks not covered by the policy. If it had been intended that the risks specifically listed were the only risks covered by the policy, then it would not have been necessary for the insurer to state further that certain other risks were not covered by the policy. Thus we have a policy providing under a general insuring clause against loss in any one casualty while *"in transit or otherwise * * *,"* followed by a list of risks insured "against direct loss or damage by * * *," followed by a list of exceptions. If it had been the intention of the insurer to include in the rider all the risks arising from a casualty, this intention could have been stated in clear and unambiguous language, to the effect that the policy did not insure against risks not enumerated therein. But the policy does not so read.

The majority opinion has not cited any authority to sustain its construction of this policy. This policy undoubtedly is unique, but it should be construed according to well-established rules. Too, there are decisions construing policies somewhat similar or analogous to this one. See Liverpool & London & Globe Ins. Co. Ltd. v. Jones et al., 207 Ark. 237, 180 S. W. (2d) 519; C. & J. Commercial Driveway, Inc. v. Fidelity & Guaranty Fire Corporation, 258 Mich. 624, 242 N. W. 789; Importers' & Exporters' Ins. Co. v. Jones, 166 Ark. 370, 266 S. W. 286; American Automobile Ins. Co. v. Fox (Civ. App., writ dismissed), 218 S. W. 92.

It was argued in those cases that the policies did not cover the losses involved, just as it is argued here that the loss involved in this case is not covered by the policy sued on. The Supreme Court of Arkansas in the case of Liverepool & London & Globe Ins. Co., Ltd. v. Jones et al, supra, after setting out certain provisions of the policy and the contentions of the insurer that it was not liable under the policy, said:

"It is argued, however, that paragraph C cannot be applied for the reason that the automobile was not injured by the 'stranding, sinking, burning, collision or derailment of any conveyance in or upon which the automobile is being transported

on land or on water.' This contention was sustained by the Ontario Supreme Court in the case of Wampler v. British Empire underwriters' Agency, 54 Dom. L. R. 657, in a suit upon a similar policy, where it was said: 'And the risk that the policy assumes is the stranding, burning, sinking, collision and derailment of the conveyance containing the motor car while being transported by land or water.' The facts in that case were that the plaintiff was crossing a stream on a ferry operated by means of a chain and he proceeded to drive his car off the ferry when it reached the land and 'While he was doing so, after the front wheels had reached the land the ferrey began to move away with the result that the car dropped into the river.' It was there said that this was not a risk insured against; but we refused to follow that holding in our case of Importers' & Exporters' Ins. Co. v. Jones, 166 Ark. 370, 266 S. W. 286, 288. In so doing Justice Wood, speaking for this court, said:

" 'To be sure, by feather-edge refinements in the construction of language and a process of strained reasoning, the language of clause (b) is susceptible of the construction given it by the Canada court, and in accordance with the contention of learned counsel for appellant. But such construction would not carry out the intention of the parties to the contract. It was manifestly their intention, by the language used, to cover all conceivable losses to the automobile while it was being transported, and they used the terms "sinking, collision, stranding, burning, and derailment" as an enumeration of the methods by which such loss or damage might occur. When the subject matter of the insurance and the language of the policy as a whole is considered, it certainly cannot be said that it was the intention of the company to limit its liability to the appellee for a loss or damage caused only by the sinking, collision, stranding, burning, and derailment of the conveyance in which the car was being transported, rather than the "sinking," etc., of the car itself. The words "sinking," etc., were words of enumeration or description of the manner of loss of the car rather than a limitation of the liability to the manner of the description of the vehicle or means of transportation. Such we believe to be the plain common sense meaning of the contract. Any other view would lead to the rather absurb conclusion that although the automobile was damaged or destroyed by "sinking," yet the appellant did not intend to be liable for such loss or damage unless the boat in which the car was being transported was also lost or destroyed by "sinking," etc. If such was the meaning of the appellant, it should have used phraseology that would express it in plain terms, instead of ambiguous language in-

dorsed in exceedingly fine print among multitudinous other provisions on the back of the policy.' "

There are also cases holding that a policy containing a general insuring clause, such as one against fire, or perils of the sea, or collision, and containing exceptions, will be construed as covering all casualties which result under the general risk insured against, except those expressly excepted in the policy. Wood v. Southern Casualty Co. (Civ. App., writ dismissed), 270 S. W. 1055; Howard Fire Ins. Co. v. Norwich & N. Y. Transportation Co., 12 Wall. 194, 79 U. S. 194, 20 L. Ed. 378; Union Ins. Co. v. Smith, 124 U. S. 405, 8 S. Ct. 534, 31 L. Ed. 497; Importers' & Exporters' Ins. Co. v. Jones, 166 Ark. 370, 266 S. W. 286.

In the case of Howard Fire Ins. Co. v. Norwich & N. Y. Transportation Co., supra, in discussing the liability of the insurance company, it was said:

"It is true, as argued, that as the insurance in this case was only against fire, the assured must be regarded as having taken the risk of collision, and it is also true that the collision caused the fire, but it is well settled that when an efficient cause nearest the loss is a peril expressly insured against, the insurer is not to be relieved from the responsibility by his showing that the property was brought within that peril by a cause not mentioned in the contract."

In its construction of the policy the majority opinion lays stress on the words "Transportation Policy," printed at the top of the policy. The policy discloses that its printed portion was supplemented by much typewritten matter, some of which broadened and some of which limited the scope of the policy; and, of course, all parts of the policy must be construed together. Certainly the words "or otherwise" were inserted in the policy for some purpose. As shown, the policy contains a general insuring clause, riders, exceptions, etc., and I do not think that it can be said, when the entire policy is considered, that it is so clear that it must be construed in favor of the insurer and against the insured. If the language of the policy admits of two constructions, then it must be construed in favor of the insured. And for proof that the policy is susceptible of two constructions, one need but look at the course of this suit through the courts. In the trial court the policy was construed favorably to the insurer. Upon appeal to the Court of Civil Appeals, that court, speaking through Chief Justice Montieth in an exhaustive opinion, construed the policy in favor of the in-

sured. And now, the matter being before this Court, *there is* not a unanimity of opinion as to the construction to be given the policy.

Construing the language of the policy in connection with the rules stated above, I am convinced that it covers the loss of the machinery and equipment of the insured, and that he is entitled to recover thereunder. I think the judgment of the Court of Civil Appeals should be affirmed.

Taylor, Associate Justice, joins in this dissent.

Opinion delivered April 7, 1948.

### ON REHEARING.

Rehearing overruled May 19, 1948.

MR. JUSTICE SHARP, dissenting.

Respondent has filed an able and vigorous motion for rehearing in this case. It again calls attention to the fact that there is no language on the first page of the policy under consideration, nor in the insuring clause, which refers the insured to the provisions of the endorsement or rider for a statement of the policy's coverage. It is contended that the coverage is provided in the words "casualty * * * while in transit or otherwise," and the endorsement does not say that it insures against *only* the risks listed from "A" to "K," and therefore there is no conflict between the endorsement and the general coverage. The motion again invokes the general rules applicable to the construction of insurance policies, and refers the Court to many authorities in support of the granting of the motion. The question involved is of great importance, and its final decision will have bearing on the construction to be given policies of insurance in the future.

Once an erroneous construction is made, it is very easy for the error to continue for a long time. It has recently come to my notice that the standard form of fire insurance policy now issued in this State does not conform with statutory requirements, due to an order of the Board of Insurance Commissioners. This is a striking instance showing the necessity of not relaxing in any degree the rule of construing a policy liberally in favor of the insured and strictly against the insurer, when, it is ambiguous or has a doubtful meaning; and, too, in connection with this case it may be well to consider the matter and evaluate the serious effect of the change.

Since 1879 the following statute, which is now Article 4929, Vernon's Annotated Civil Statutes, has been the law of this State: "A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. The provisions of this article shall not apply to personal property." Acts 1879, p. 83.

Prior to June 1, 1944, the form of the standard fire insurance policy which was approved by the Board of Insurance Commissioners contained the following provision:

"In case there be a total loss by fire of any real property insured by this policy, as to such real property so totally destroyed, if a liability shall exist hereunder for such loss, it shall be held and considered, subject to the terms of this policy legally applicable, to be a liquidated demand under Article 4929, Revised Civil Statutes of Texas, against this Company for the full amount hereof covering such real estate. In all other cases this company shall not be liable beyond the actual cash value of the property at the time of the loss, with proper deductions for depreciation however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality. In so far as any of the property described herein is manufactured property, owned by the manufacturer, this company shall not, as to such property, be liable beyond what it would, at the time of the fire, cost the manufacturer to replace said lost property by manufacture, with expense of delivery to the place of the loss."

The form of standard fire insurance policy which contained the above provision has been superseded by a new form which does not contain the provision. The new standard form of fire insurance policy approved by the Board of Insurance Commissioners has been effective in this State since June 1, 1944, and in lieu of the provision copied above contains the following provision:

"Liability hereunder shall not exceed the actual cash value of the property at the time of loss, ascertained with proper deduction for depreciation; nor shall it exceed the amount it would cost to repair or replace the property with material of like kind and quality within a reasonable time after the loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from

interruption of business or manufacture; nor shall it exceed the interest of the insured, or the specific amounts shown under 'Amount of Insurance.' "

The new form completely ignores Article 4929. Nowhere in the wording of the new form is this article mentioned or reference made thereto. The amount of recovery for a total loss by fire of a building as prescribed by the terms of the new form of policy is clearly at variance with Article 4929, and undertakes to curtail the amount of recovery. The changed form of policy no longer apprizes the policyholder of the rights guaranteed to him by Article 4929, as the old form of policy did. Thus it is quite obvious that a person unlearned in the law, and not knowing of the rights guaranteed to policyholders of fire insurance by Article 4929, could easily be misled as to the amount of recovery to which he is entitled under his policy. This is but another instance which shows how necessary it is for courts to construe a policy strictly against the insurer and liberally in favor of the policyholder whenever there is any obscurity or ambiguity in the wording of the policy.

The motion for rehearing should be granted, and the judgment of the Court of Civil Appeals should be affirmed.

Taylor, Associate Justice, joins in this dissent.

Opinion delivered May 19, 1948.