C. V. NEAS

v.

HOME FIRE AND MARINE INSURANCE COMPANY OF CALIFORNIA.

Civ. No. 1405.

United States District Court
N. D. Texas, Abilene Division.

Oct. 31, 1955.

Scarborough, Yates, Scarborough & Black, Abilene, Tex., for plaintiff.

Thompson, Coe & Cousins, Dallas, Tex., for defendant.

ESTES, District Judge.

Plaintiff brought this suit against defendant for damage to equipment which he claimed was covered by a policy of insurance issued to him by the defendant entitled "Special Floater Policy" in the amount of $21,000, for an annual premium of $445 "As per form", which form was headed "Oil and gas well drilling rig floater" and which insured "One C–65 Wich-Tex. * * * Well Servicing Equipment" against loss or damage, specifying certain risks insured against, one of which was (paragraph 5(d): "Derailment or collision or overturn of the conveyance upon which the described property is being transported, including sinking or stranding of vessel while being transported on a regular ferry line." Other named risks insured against are not here material. The policy provided that it did not insure against loss or damage caused by or resulting from certain named events, including "(c) Collapse, fall or sinking of derrick or substructure (except as the direct result of an insured peril)."

The facts established by stipulation and the undisputed testimony of defendant's agent, are as follows:

The insured rig consisted of a 65-foot mast, motor, etc. bolted on the flat bed of a truck, which was ordinarily transported from place to place, and ordinarily used for servicing oil wells in which operation the rig would be driven up to the well and there set up and anchored by guy lines where it would ordinarily be used to pull pipe from the well.

At the time of the occurrence here involved it was being used to lift a grain elevator so as to lay it flat on the ground. For that purpose it was driven up to the elevator and there anchored to the ground with six guy lines. It was then attached to the grain elevator which was lifted and its bottom plates removed so that it was left hanging in the air, held aloft by the machinery insured. Then a winch truck was hooked up to the bottom of the elevator, to pull it to one side in order that it could be laid flat on the ground. While this operation was in progress one of the guy wires supporting the rig in question was pulled out of the ground and the rig was overturned, resulting in $3500 worth of damage. The stipulation provided "that said rig was used 90% of the time in a manner it was being used at the time the grain elevator was lifted, except for the character of the object being lifted."

It was further stipulated that "There was available as an additional coverage and for an additional premium by means of endorsement of the policy here in suit coverage which would read as follows: '* * * this policy is extended to cover loss of damage caused by direct collision with any vehicle (excepting the transporting vehicle) or object, or overturn of the unit shown as Item No. —— on the schedule attached to this policy, but excluding the vehicle on which such unit is permanently attached and shown as Item No. —— on such schedule; * * *'"

The sole question is whether or not under this policy, and particularly under the above quoted provisions of it, this loss was one insured against. The parties have agreed on the amount of the damage and have also agreed that if the loss is not covered by the policy the plaintiff is not entitled to recover.

The question narrows down to whether or not the loss resulted from "derailment or collision or overturn of the conveyance upon which the described property is being transported" within the meaning of the policy.

The insured peril in question is not against loss by overturn of the conveyance upon which the insured property was situated, but loss by "overturn of the conveyance upon which the described property *is being transported*."

The whole context of sentence (d) of paragraph 5 of the policy deals with losses occurring in the course of transportation. Derailment or collision of a conveyance imports damage occurring in the course of transportation. The last part of the sentence "including sinking or stranding of vessel while being transported on a regular ferry line" certainly relates to transportation, and the modifying words "being transported" following the enumeration of "overturn of the conveyance upon which the described property is" seem clearly to limit the loss covered by this portion of the policy to a loss occurring in the course of transportation of the insured property.

The cases of National Surety Marine Ins. Corp. v. Failing, 146 Tex. 607, 211 S.W.2d 567, and Mercury Ins. Co. v. Varner, Tex.Civ.App., 231 S.W.2d 519 are authority for the proposition, already assumed, that the perils insured against are only those listed in the policy, and the latter case is probably also authority for the proposition (also assumed here) that there was an "overturn" within the meaning of that word as used in the policy. Further than that they do not appear to be in point.

█ Insurance policies are construed liberally in favor of the insured and strictly against the insurer who has selected the language used. However, this is only a rule of construction where the policy is susceptible of more than one interpretation. It is as true of insurance policies as of other contracts that the rights of the parties are to be determined from the contract and that the courts may not, in the guise of strict construction against the insurer, make what amounts to a new contract of the parties. Imperial Fire Ins. Co. v. County of Coos, 151 U.S. 452, 14 S.Ct. 379, 38 L.Ed. 231; Fidelity Union Fire Ins. Co. of Dallas, Texas v. Kelleher, 9 Cir., 13 F.2d 745; Hall v. Mutual Ben. Health & Accident Ass'n, Tex.Civ.App., 220 S.W.2d 934; Commercial Standard Ins. Co. v. McKinney, Tex.Civ.App., 114 S.W.2d 338.

█ Language of an insurance policy is to be construed according to its ordinary import, Davis v. National Casualty Co., 142 Tex. 29, 175 S.W.2d 957; 24 Tex. Jur. p. 702, "and it is not permissible to impute an unusual meaning to language used in a contract of insurance, any more than to the language of any other contract". American Automobile Ins. Co. v. Baker, Tex.Civ.App., 5 S.W.2d 252, 254.

█ The words "is being transported" do not necessarily mean that the machinery in question would have to be actually in motion in order for the loss to be covered; Provident Life & Accident Ins. Co. v. Nitsch, 5 Cir., 123 F.2d 600, 138 A.L.R. 399; Maryland Casualty Co. v. Cross, 5 Cir., 112 F.2d 58, although such is indicated by the opinion in National Surety Marine Ins. Corp. v. Failing, 146 Tex. 607, 211 S.W.2d 567, supra.

Despite the fact that the insured property might be "being transported" at a given time without actually being in motion at the instant an accident occurred, in my opinion the loss would not be covered unless at that instant it was *in the process of being transported.* The word "transport" in its ordinary sense means "to convey *from one point to another* without reference to the distance between the points." Magnolia Warehouse & Storage Co. v. Davis & Blackwell, 108 Tex. 422, 426, 195 S.W. 184, 186.

If this loss had occurred while the insured property was being conveyed from one point to another, even a distance of a few feet, it could be plausibly argued that the loss would be covered. But under the facts here the movement of the property to the point at which it was to be, and was being, used had been completed and it was anchored to the ground with six guy lines. It would do violence to the language of the contract to hold that it was "being transported" when the accident occurred.

Plaintiff insured contends that the policy is susceptible of the construction that since the property here insured was bolted on the bed of the truck by means of

which it was transported when occasion arose, any loss resulting from the overturn would be covered regardless of whether or not at that particular time any transportation was in progress. Possibly if the policy insured against overturn of a conveyance upon which the property "is transported" instead of "is being transported" this would be a plausible argument, giving to the words "is transported" a meaning of "is customarily transported" or "is transported whenever transportation is necessary". But this is not what the policy says. It insures against overturn of a conveyance on which the property "is *being* transported". These words are not merely descriptive of the property insured but have a connotation of time and mean the same thing as though the word "while" was used in the first part of this sentence as well as in the second part relating to sinking or stranding of a ferry. It seems clear that property is not "being transported" unless transportation is in progress.

Webster's New International Dictionary has the following to say about the words "is being": "being, present participle of BE. Specifically, after is, are, was or were followed by a past participle, *being* indicates the process toward the completed result expressed by the participle."

The words "is being transported" clearly mean that the overturn insured against was only an overturn occurring at a time when the property was in the process of being "conveyed from one point to another", whether or not actually in motion at the time of the accident, Magnolia Warehouse & Storage Co. v. Davis and Blackwell, supra.

■ The policy is not susceptible of any other construction without doing violence to its language; and therefore the loss here involved resulted from an accident not covered by the insurance policy sued upon.

Accordingly, I find that judgment should be entered in favor of the defendant.

Let the attorneys for the defendant prepare and present a judgment in accordance with this memorandum decision, which is filed in lieu of findings of fact and conclusions of law, pursuant to Rule 52(a), Fed.Rules Civ.Proc., 28 U.S.C.A.